Missouri, Kansas & Texas Railway Company v.
H. D. Wood et al.

No. 1054. Decided February 10, 1902.

**1.—Infectious Disease—Negligence—Remote Result.**

Negligence in permitting one of its employes sent to the company hospital for treatment to be there infected with smallpox, was not a ground for holding the company liable to a third party thereafter infected from such employe. (P. 232.)

**2.—Quarantine—Immunity from Liability.**

An individual or private corporation voluntarily undertaking the medical treatment and quarantining of a smallpox patient can not claim the exemption from liability for acts of its officers or agents enjoyed by a city while discharging such duty. (P. 232.)

**3.—Railway—Hospital—Quarantine—Infectious Disease—Negligence.**

A railway company undertaking to maintain quarantine over and furnish medical attention to one of its employes infected with smallpox, becomes liable to third parties for negligence in maintaining such quarantine, whereby the patient wandered away while delirious and infected with the disease. (Pp. 229-234.)

Questions certified from the Court of Civil Appeals, Fifth District, in an appeal from Hunt County.

*T. S. Miller, W. C. Jones, Craddock & Looney,* and *Head & Dillard,* for appellant.—When an employer employs physicians or nurses to care for an employe afflicted with a contagious disease, and through the negligence or inefficiency of such physicians or nurses the employe, while in a state of delirium, wanders away and communicates the disease to a third person, in no way a party to the agreement and having no contractual relation with employer or employe, the damages thus brought upon such third person are too remote to give a cause of action against the employer.

There being no contractual relation between plaintiffs and defendant concerning the care of Alonzo Dickson, plaintiffs can not recover on account of the failure of defendant to properly nurse, guard, and care for Alonzo Dickson. House v. Waterworks, 88 Texas, 233; 1 Suth. on Dam., 55; Anthony v. Slaid, 11 Metc., 290; Buckley v. Gray, 52 Am. St. Rep., 88; Shearm. & Redf. on Neg., sec. 116; Cooley on Torts, 104; Insurance Co. v. Railway, 25 Conn., 265.

No one is responsible for the act or omission of another unless that other is his agent or servant. Unless such relation exists the law will not impute to one person the negligent act of another. Shearm. & Redf. on Neg., 5 ed., sec. 144; King v. Railway, 66 N. Y., 181; Hexamer v. Webb, 101 N. Y., 377.

Unless Dickson was defendant's agent in this matter, defendant would not be liable for the communication of the disease by him. Railway v. Cooper, 88 Texas, 607.

Where one is under the control of another, and there is no overt act on the part of the controlling person bringing about an injury to the third person by the person under his control, but only a negligent permitting of such persons to do an injury, there is no liability. Chandler v. Deaton, 37 Texas, 406; Baker v. Haldeman, 69 Am. Dec., 430; Paul v. Hummel, 97 Am. Dec., 381; Haggerty v. Powers, 56 Am. Rep., 1011; Tift v. Tift, 4 Denio, 177.

The inmates of a county hospital are not servants of the superintendent, and he is not responsible for their acts. 1 Lawson, Rights and Rem., sec. 294, p. 513; Schrubbe v. Connell, 69 Wis., 476.

General doctrine as to liability of lunatic for his torts. Williams v. Hays, 143 N. Y., 442.

Even if the hospital department was conducted by the defendant company, yet this department was a charity. The company in conducting it was engaged in the administration of a charity and could not be held liable to a third person for the negligence of the employes of the hospital in the care of one of the patients by which such third person became injured through the act of this patient. Fire Ins. Patrol v. Boyd, 15 Atl, Rep., 553; Hailway v. Artist, 60 Fed. Rep., 365; Downes v. Harper Hospital, 45 Am. St. Rep., 427; Benton v. Trustees, 12 Am. and Eng. Corp. Cases, 625; Richardson v. Coal Co., 32 Pac. Rep., 1012; Pierce v. Railway, 66 Fed. Rep., 44; Eighmy v. Railway, 61 N. W. Rep., 1056.

The duty of preventing the spread of a contagious disease, and of establishing a quarantine, is a public duty intrusted to the state and municipal authorities, and when a private citizen undertakes to isolate and care for one who has a contagious disease, a person who contracts such a disease from the patient leaving the place of isolation can not recover against him who is caring for the patient, because to permit such recovery would be to allow damages against a private individual for not performing a public duty with the enforcement of which the

public authorities are charged.  White v. City of San Antonio, 60 S. W. Rep., 426; Ogg v. City of Lansing, 14 Am. Rep., 499; Brown v. Vinalhaven, 65 Me., 402.

In support of a motion for rehearing, which was overruled, Messrs. *Miller* and *Head & Dillard,* counsel for appellant, argued:  The court say they are unable to discover a distinction between the case put and the case at bar; that "if there is a reason for denying to Wood as great security for his wife and children against the diseased man as would have been accorded to him in behalf of his beasts against a diseased horse, it has not been suggested by counsel for appellant."  The distinction is found in a maxim of the law,—"Sic utere tuo ut alienum non laedas,"—So use your own that another you may not injure.  You may use what belongs to yourself as you see fit, except to harm another person.  Enjoy your own private rights as you please, but take care not to molest others in the lawful exercise of their rights, by your affirmative action.  The distinction is this:  In the horse which spreads the disease, in the vicious horse which is permitted to wander at large doing damage, the owner has a right of property, and, so having the right of property, the thing which does the injury itself being property, the owner must so use his property as not to injure another.  Where the vicious animal escapes and injures another, it is not the mere fact that the owner has the right of restraint which makes him liable, but in connection with that right he had a right of property.  To repeat: the thing which was doing the wrong was his property, his chattel, and when he permitted it to do the wrong he was so using his property as to injure another and violating a maxim almost as old perchance as the common law.  In Dixon the appellant had no right of property.  Appellant was not using Dixon to the injury of another.  Dixon was not the chattel of defendant, did not belong to him; and if it be granted that defendant did have the right of restraint over Dixon, yet, not having the right of property in him, you have no right to argue from the law applying to diseased or vicious animals that appellant would be liable on account of the infection communicated by Dixon.  It is true there is no sound reason for denying to Wood as great security for his wife and children against the diseased man as would have been accorded him in favor of his beasts against a diseased horse, but the question is not whether he is denied such protection, but who is liable for the injury done.  If Dixon was property, then might the reasoning of the court be effective; but we do submit with candor, with earnestness, and with insistence, that it is not a just or fair conclusion that because a man must use his property in a way not to injure another, he is therefore liable because a person under his control escapes from it and injures another.

There is, we think, no principle better settled than that the father is not liable for the acts of his vicious child, even though he knows

the child to be vicious, unless he is present with the child directing him to do the wrong or in some way aids or abets it.

The court, we think, is unfortunate both in its illustration and its argument. The argument, when boiled down, is simply this: He who has the right of restraint over any person is liable for not exercising such restraint. Indeed, the court say, "Wherever the duty of restraining another arises, and the power of control over him exists, liability will follow upon a failure to perform the duty."

Following the principle declared by the court we put this case, which the court with all its acumen and ability,—and none recognizes these more than we,—can not differentiate from the case at bar, yet we believe there can not be found a line or syllable of law to sustain the case we now put: A father has an idiot minor son who has a mania for burning things and whose disposition is known to the father. One day the father goes from home leaving the boy wandering about his premises knowing he is liable to stray from them. The boy goes to a neighbor's house, sets fire to it, and burns it down. Is the father liable? Under the doctrine announced in this case he is. The father had the power of restraint over the son. It was his duty to restrain him from doing injury to others. In a word, he is brought directly within the circumstances under which the court declares liability will exist for not restraining a person under his charge. Yet, we repeat, we believe no case can be found which holds him liable.

Suppose that the boy instead of having a mania for burning has one for fighting. The father negligently permits him to leave home and he does some bodily injury to a neighbor. Can the father he held liable for this? If so, we have found no case in which such liability is announced. The father had charge of the boy; the father had the right of restraint; yet he is guilty only of an act of omission in not restraining the boy at the proper time and he will not be liable for what the boy has done.

Suppose that the father of the idiot son also had a bull of known vicious disposition; that he negligently permitted this animal to wander from his premises and it gored a neighbor. Would the owner be held liable in this case? Clearly so under all the authorities. Likewise, as we think, under all the authorities he would not be liable for the acts of his son. What is the distinction? As far as the boy was concerned he was not the agent or servant of the father in doing the injury that was done and the father could not be held liable for the injury inflicted. The vicious animal, however, was his property. Its vicious disposition was known to the owner, and the owner in permitting him to run at large was not so using his property as not to injure others and is therefore liable for the wrong done. We might paraphrase the language of the court and say, "If there be a sound reason for denying to this injured man as great security against the idiot boy as against this vicious bull, it has not been suggested and we are unable to discover any tenable basis for the distinction." Yet the dis-

tinction does exist and is clearly announced in the law, and we have endeavored to point it out in referring to the principle of law on which it rests: First, as to the idiot boy, as to the diseased man, as to any person, no one is liable for his acts unless he be the agent or servant of such person. Second, as to the vicious animal the owner is liable for his vicious acts, because, having the right of property, he must so use and control it as not to injure another.

The court finds further reason in the doctrine enunciated in various cases cited by it, as King v. Vantandillo, Smith v. Baker, and the line of cases announcing similar doctrines. We shall not notice all the cases mentioned by the court, but only enough of them to show that they will not serve as a support for the decision in this case and to illustrate what we think to be a clear distinction between it and them. We believe that it will be found in these and all similar cases that before a person can be held liable on account of the spread of infectious disease by another he must either have had some contract with the person to whom the disease is communicated which has been violated, or else that he has been guilty of some act of commission, some positive and overt wrong which amounts to a personal tort against the injured party. We do not think that any case will be found where a mere act of omission on the part of a person in failing to restrain another will hold him liable because such other has spread a contagious disease.

Before we proceed further, we desire to note that in Tunbridge Wells Board v. Bishop and in King v. Vantandillo there were indictments on acount of the violation of a statute. The cases, therefore, on this ground might be held not to be authority; for if a law were passed declaring that if a father did not restrain his vicious child from wandering from home and doing injury to others he would be guilty of an offense in so doing, it would doubtless be a valid law. So, if a law were passed providing that any man who had an infectious disease in his house should restrain the members of his family from leaving it, this would doubtless be a valid law. But it does not therefore follow in either instance that failure to do the thing which the statute makes penal would, aside from the statute, be an actionable wrong. We do not wish, however, to rest our argument here. We merely note the point in passing. Laying the statute aside and treating the cases as if there were no statute, we find the following: In the Tunbridge Wells case the person in attendance upon the man took him through streets and in public places. In King v. Vantandillo the mother took her child who was sick with smallpox in her arms and carried it along the highway. In Smith v. Baker the father took his children afflicted with the whooping cough to a boarding house and brought them in contact with other children who contracted the disease.

As we have said, we have not access to the case of Asylum District v. Hill, but it seems from a quotation in the opinion of the court that the custodian of the sick person brought him into a public thorough-

fare, committing thereby, it may be remarked in passing, an indictable offense.

These cases are enough for illustration. In every one of them the person held to have done wrong was doing an overt act. He actually brought the infected person into contact with others. He was guilty of an act of commission, a positive and affirmative wrong which amounted to a tort against a person who might be injured. In no instance was the wrong charged against him that he had not restrained such person, but that he had carried the infected person to a place where others were injured, or where the statute said he should not be carried.

We believe if a man were to entice a person afflicted with smallpox into the house of another he would be surely liable to that other if he contracted the disease, but it does not therefore follow that he would be liable to such person if in nursing one sick of the smallpox he did it so negligently that the sick man in delirium went from his bed into the house of a neighbor and communicated the disease to his family. In the one case he was guilty of an act of commission, guilty of an overt wrong, guilty of a positive tort against the person into whose house the sick man was enticed. In the other instance, he was not.

*Evans & Elder,* for appellees.—Every person is bound at common law to use ordinary care in the prosecution of his business or undertaking to avoid injury to others, and when one is engaged in an act which the circumstances indicate may be dangerous to others, and the event whose occurrence is necessary to make the act injurious can be readily seen as likely to occur under the circumstances, such·person so engaged is liable if he does not take all the care which prudence would suggest to avoid the injury. 16 Am. and Eng. Enc. of Law, old ed., 428, note 4; Moak's Underh. on Torts, 25; Waterworks Co. v. House, 88 Texas, 241.

The connection between appellant's negligence—which consisted in failing to employ a sufficient number of competent and· trustworthy guards to restrain Dickson and Cunningham—and appellees' injury is not broken by the intervention of Dickson and Cunningham if at the time appellant undertook to restrain them it knew they were delirious and likely to escape if not properly guarded, and if at the time they, or either of them, entered appellees' premises and communicated the disease they were delirious and incapable of self-control, for the reason that the acts of such persons were not the acts of a responsible person, were not the culpable acts of a human being.

If subsequent to the original wrongful or negligent act a new cause has intervened, and if the intervening cause and its probable or reasonable consequences be such as could reasonably have been anticipated by the original wrongdoer, the causal connection between the original wrongful act and the subsequent injury is not broken, and the original wrongdoer is liable in damages for the injury. Railway v. Seale, 65 Texas, 277; Railway v. McKinsey, 78 Texas, 299; Galveston v. Posnain-

sky, 62 Texas, 134; Gonzales v. Galveston, 84 Texas, 3; Railway v. Bigham, 90 Texas, 223.

If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. 1 Shearm. & Redf. on Neg., sec. 34.

If appellant entered into a contract with its employes to furnish them nursing and medical treatment in case they become sick with smallpox, and if in the treatment of that disease it is usual and customary or necessary to isolate and detain the persons so afflicted so as to prevent them from communicating the disease to other persons, then the right to isolate and detain becomes a part of the contract. And where it is alleged that it was the duty of appellant in pursuance of its contract with its employes to treat them to use all the necessary and usual methods in their treatment, and if it was smallpox or other contagious disease it was the duty of appellant to isolate and detain its said employes to the end that they may be more effectually and efficiently treated, and to prevent exposure and the spread of the disease to other persons, such allegations show power and authority of appellant to detain Dickson and Cunningham in the pest camp or elsewhere, because appellant was authorized to use such methods as are usual and necessary in the treatment of such disease, and the detention of such employes is with their consent and not against their will.

The hospital department of appellant company is not a separate institution distinct from the railway company, but is a department of the service of the company, and the surgeons and attendants are the agents and servants of the company that they serve.

BROWN, Associate Justice.—The Court of Civil Appeals for the Fifth District has certified to this court the following statement and questions:

"The appellant, the Missouri, Kansas & Texas Railway Company of Texas, enters into agreements with its employes, in consideration of deducting a stipulated sum from their wages each month, that in case any one of them should become sick or injured while in its service, it would furnish them surgical and medical attention. Appellant entered into a contract with Alonzo Dickson, an employe, whereby it was agreed, in consideration of deducting 25 cents from his wages each month, that if he should become injured or sick it would take charge of him and treat him for such injury or sickness. On August 1, 1899, and for many years prior thereto, the appellant was operating and controlling a hospital department for the purpose of treating its sick and injured employes. The Missouri, Kansas & Texas Railway Company of Texas, and

the Missouri, Kansas & Texas Railway Company, constitute what is known as the Missouri, Kansas & Texas Railway System. Said companies operate, in connection with and as a part of the claim and legal departments, their hospital department, under one general management, for the mutual benefit and interest of the companies and their respective employes.

"The Kansas company owns a hospital at Sedalia, Mo., that is used by the two companies, where some of the employes of appellant are sent for treatment when sick or injured.

"During the latter part of July, 1899, Alonzo Dickson, who was then in the employment of appellant as a section hand and had been in such employment for four years in Hunt County, received a slight injury in such service and was sent to the Sedalia hospital, arriving there on August 1, 1899. At the time he was placed in the hospital he was placed in a ward with some colored patients who were broken out with smallpox, smallpox having existed in the hospital from the 10th day of July previous. He complained to the surgeon in charge and told him that those negroes had smallpox and that he desired to leave the hospital. He was told by the surgeon that it was only chickenpox, but to come around the next morning and he would give him a pass back to Greenville. On the next morning, August 2, 1899, he was discharged from the hospital, sent back to Hunt County, and placed at work for appellant under James Ewing, section foreman.

"George McNeil was the house surgeon of said hospital. It was his duty to examine, admit, treat, and discharge patients sent to the hospital, and to keep a register showing the names and address and the dates of admission and discharge of all patients sent to the hospital for treatment. This surgeon was inexperienced in the treatment of smallpox, never having treated a case prior to this time, there never having been a case of smallpox in the hospital since he had been in charge, he being put in charge in 1890, the same year he graduated from college. It was not determined that there was smallpox in the hospital until August 2, 1899, the day that Dickson was discharged from and after he left the hospital.

"On that day the city of Sedalia quarantined the hospital on account of the prevalence of smallpox in the hospital, and it remained under quarantine until September 11, 1899. Prior to the 2d day of August, appellant did not know that smallpox existed in the hospital, but learned it on that day and that Dickson had been exposed thereto and was liable to break out with the disease in about fifteen days. No precautions were taken to protect him, or the public against him, until the 19th day of August, when he broke out with the disease. On August 3, 1899, the division superintendent of appellant, A. D. Bethard, at Denison, Texas, sent to A. W. Baxley, at Greenville, Texas, the roadmaster of the Mineola division of appellant's lines, the following telegram: 'During quarantine at Sedalia hospital, local surgeons will look after

sick or injured employes except those who desire to go to hospital, who may be sent to Dallas, Fort Worth, or Houston infirmary.'

"When Dickson broke out with smallpox and this fact was made known to the company's local surgeon, Dr. Garnett, he wired to Dr. Yancey, the chief surgeon, to know what to do with him and the chief surgeon wired him: 'Isolate and quarantine him, secure a nurse at reasonable wages, and give him such attention there as he will need. Write me particulars and daily expenses. Attend to vaccination and watch anyone who may have been exposed by him.'

"When R. M. Chapman, who was then the mayor of Greenville, learned that Dickson had smallpox, and before he learned that he was an employe of appellant and had been exposed to the disease at its hospital, he purchased a tent and arranged with the owner of some lands preparatory to taking charge of Dickson. This was Sunday afternoon, August 20, 1899. But before taking charge of Dickson, Dr. Garnett showed Chapman his instructions from Yancey, at which time Dr. Garnett, acting under the said instructions of Dr. Yancey, took charge of Dickson and undertook to isolate and quarantine him. He placed him in the tent and on the land that had already been secured and designated by Chapman as a quarantine camp, and Chapman took no further steps until after Dickson had escaped, which was on Tuesday morning, August 22. On that afternoon, the mayor, acting on the understanding that the railway company would defray the expenses, hired one additional guard for the pest camp and established a detention camp near the pest camp and confined in it all who had been exposed to Dickson. Dr. Garnett having taken charge of Dickson, undertook to isolate and quarantine him on behalf of the railroad company, neglected to employ a sufficient number of attendants or guards to restrain him, but negligently employed an incompetent Mexican and placed him in charge of Dickson to guard and nurse him for the first two days. At the time the Mexican was put in charge of Dickson, he (Dickson) was delirious with fever, and it was known that persons thus suffering would likely escape. While Dickson was in a delirious condition, the Mexican went to sleep and negligently permitted him to escape from the camp and to wander upon the premises of appellees and communicate to them and their child the disease, inflicting the injuries complained of by appellees. Appellants exercised due care in the selection of their surgeons and physicians.

"Questions.—Under the foregoing facts, did the negligence of appellant's local surgeon in employing an incompetent nurse or attendant for Dickson, and the negligence of said attendant in permitting said Dickson to escape while delirious, render appellant liable for the damages sustained by appellee by reason of the smallpox being communicated to him and his family by said Dickson?

"2. Is the appellant liable for the damages sustained by appellee by reason of having exposed Dickson to the smallpox at the hospital at Sedalia and afterwards assuming care of him, in failing to isolate and

have him properly guarded to prevent his escape and communicating the disease to appellee and family?"

The contract between appellant and Dickson and the acts of the railroad company in sending him to the hospital at Sedalia, where he became infected with smallpox, were pertinent to the issues in this case only to the extent they tend to show that Dr. Garnett, in taking charge of the sick man and undertaking to care for him, acted as appellant's agent and within the scope of his authority. The Court of Civil Appeals having found that Dr. Garnett was authorized by the appellant to take charge of Dickson, it will be unnecessary for us to notice the relative rights and liabilities of the railroad company and Dickson.

Counsel for appellant claim that the quarantine of Dickson was a public duty which the city of Greenville might have taken in hand without liability for the acts of its officers, from which the conclusion is drawn that for performing the same acts the railroad company is entitled to the same immunity. White v. San Antonio, 60 Southwestern Reporter, 426, is cited to support the proposition. It is sufficient to say that the appellant occupied a very different position to that of the city of San Antonio; for the latter was engaged in the enforcement of a law of the State discharging a duty enjoined upon it by the statute, while the appellant voluntarily undertook to do what the city might have done, being neither authorized nor required by law to do so. It did not represent the State of Texas and was not entitled to the immunity from liability which is accorded to the State.

Counsel urge the proposition that the railroad company owed no duty to the appellee; therefore, there was no liability for Dickson's escape. House v. Waterworks, 88 Texas, 233, is relied upon to sustain that position, but the cases are so dissimilar that the principles announced in that case are not applicable in this. In House v. Waterworks, the two classes of cases are distinguished upon authorities cited and discussed. Nonliability for a failure to perform a duty due to the public as such is there commented upon and contrasted with the class of duties which are intended to benefit the individuals composing the public. This case belongs to the latter class, because whatever affects the health of the community necessarily affects the individual members thereof; and when the duty to prevent the spread of a contagious disease rests upon a private corporation or person, an obligation arises in favor of each member of the community, and a right of action exists in favor of him who suffers from its breach.

But counsel for the railroad company earnestly insist that it is not liable for the act of Dickson in going away from the camp, although he was at the time delirious to the extent of being incapable of self-control. In Tunbridge W. L. Board v. Bisshopp, 2 Common Pleas Division, page 192, Denman, J., stated and answered the question thus: "Can a man be said to 'expose' or to 'be in charge of' one who is of full age and a free agent? A man weakened by disease may fairly be said to be 'exposed' by the person who is attending upon him. The statute can not be limited

to legal control or it will become a dead letter." That case proceeded before the court upon the ground that the defendant had exposed one infected with a contagious disease by going with him through the streets and in public places, but the defendant was acquitted because he had used proper care in doing so. The case answers the objection made that the escape of Dickson and his going upon the premises of the appellee could not be charged to the railroad company.

Whenever the duty of restraining another arises and the power of control over him exists, liability will follow upon a failure to perform the duty. In Metropolitan Asylum District v. Hill, 6 Appeal Cases, 204, Lord Blackburn said: "When the disease is infectious, there is a legal obligation on the sick person and on those who have the custody of him not to do anything that can be avoided which shall tend to spread the infection; and if either do so, as by bringing the infected person into a public thoroughfare, it is an indictable offense, though it will be a defense to an indictment if it can be shown that there was a sufficient cause to excuse what is prima facie wrong." The same principle obtains in reference to animals of known vicious character which the owner is required to restrain to prevent them from inflicting injury upon others; and the owners of animals known to be infected with contagious diseases must control them in such manner as to prevent them from communicating the disease to the animals of other persons. Clarendon L. Co. v. McClelland Bros., 89 Texas, 490. If the railroad company had undertaken to keep a horse known to be affected with a contagious disease at the same place and by the same means, and the horse had been permitted, through the negligence of the attendant, to escape and had communicated the disease to a horse the property of the appellee, there would be no doubt of the liability of the railroad company for the damages. If there be a sound reason for denying to Wood as great security for his wife and children against the diseased man as would have been accorded to him in favor of his beasts against a diseased horse, it has not been suggested by counsel for the appellant, and we are unable to discover any tenable basis for the distinction.

The quantum of diligence which was required of the appellant depended upon the character of the disease and the danger of communicating it to others. "If the business be hazardous to the lives of others, the care to be used must be of a nature more exacting than required where no such hazard exists; the greater the hazard, the more complete must be the exercise of care." Railway v. Hewitt, 67 Texas, 478. Smallpox is commonly known to be a highly contagious disease and very dangerous to human life, and isolation of the infected person is generally recognized as necessary to afford protection to the community in which he may be found. The Court of Civil Appeals found as a fact that it is a characteristic of smallpox, known to appellant's agent, that the patient is liable to become delirious to the degree of irresponsibility and to wander from the place of confinement, being thereby liable to come into contact with persons in the neighborhood. The object of placing Dickson in the

tent and supplying a nurse and guard for him was not alone to care for and to provide for him, but also to protect the public against infection by contact, and when the railroad company undertook to treat Dickson for the disease and to care for him at the place designated by the mayor of Greenville, it assumed the duty of using ordinary care to prevent Dickson from exposing himself in delirium, or from being exposed otherwise so as to communicate the disease to other persons, and having failed, through the negligence of its employes, to use such care, and by reason of its negligence Dickson having escaped and communicated the disease to the appellee's family, the railroad company was liable for the damage caused thereby. King v. Vantandillo, 4 Maule & S., 75; King v. Burnett, Id., 273; Haag v. Board of Commissioners, 60 Ind., 511; 28 Am. Rep., 654; Smith v. Baker, 20 Fed. Rep., 709; Metrop. Asylum Dist. v. Hill, 6 Appeal Cases, 204.

To both questions, we answer that under the facts stated the railroad company was liable to the appellee Wood for the damages caused to him by reason of the smallpox being communicated to him and his family by Dickson through the negligence of the agent of the railroad company.