JAMES MELLODY V. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY
OF TEXAS.

Decided January 8, 1910.

**Master and Servant—Contagious Disease—Ordinary Care.**

In a suit against a railroad company for damages for allowing its section house to become infected with smallpox whereby plaintiff contracted the disease and lost his eyesight, evidence reviewed and held so insufficient to show negligence on the part of the defendant as to justify the trial court in instructing a verdict against the plaintiff.

Appeal from the District Court of Rockwall County. Tried below before Hon. F. L. Hawkins.

*W. H. Allen* and *Wallace & Mount,* for appellant.

*Coke, Miller & Coke, W. C. Jones* and *Stroud & Ridgell,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—This suit was instituted by the appellant against the appellee to recover damages sustained by him

through the alleged negligence of appellee in permitting its section house in Rockwall County to become infected with smallpox, which was communicated to appellant, destroying his eyesight and rendering him totally blind. The petition alleges, in substance, that in March, 1891, the defendant made a contract of employment with plaintiff's father as a section foreman, and that by virtue of such contract plaintiff's father was required to reside with his family, including plaintiff, in defendant's section house at or near the town of Rockwall, which the defendant maintained as a boarding and lodging house for its two section gangs with their respective foremen, one of whom was plaintiff's father, the other one Fred Bryers; that on or about said date said Bryers, under and by virtue of his employment, undertook to occupy said section house with his family, which then consisted of himself and his infant son; that the said child of the said Bryers had been exposed to smallpox at Palestine, Texas, before being brought to said section house, which was or ought to have been known to Bryers; that in a few days after said child was placed in the section house by its father it became sick of smallpox, and that in this way the defendant negligently permitted such section house to become infected with a dangerous contagious disease, thereby negligently communicating such disease to plaintiff, then an infant four years of age, which resulted in rendering plaintiff totally and hopelessly blind, and causing him to then suffer great physical pain and mental anguish, which pain and anguish plaintiff has continuously suffered from the date of his sickness and will in the future continue to suffer.

The defendant answered by general demurrer, general denial, and specially plead, in substance, that if its section foreman brought his child to the section house near Rockwall after it had been exposed to smallpox, the fact that the child had been so exposed was unknown to the said section foreman or to the defendant; that the section foreman, in bringing the child from Palestine to Rockwall, if he did bring it as alleged by plaintiff, was not, in so doing, acting in the discharge of any duty incident to or connected with his employment, but was acting solely in his individual capacity, and at the time was not actively engaged in the service of defendant; that the defendant had no knowledge whatever that the said section foreman had gone to Palestine for his child; that the room in the section house occupied by its foreman was under his exclusive control and management; and that if the child was brought to the section house it was brought there under an agreement with plaintiff's father and mother, who had control of the house, about which private contract or agreement defendant had no knowledge and with which it had nothing to do.

After the introduction of the evidence the trial court instructed the jury to return a verdict in favor of the defendant railway company. This instruction was obeyed and judgment entered in accordance therewith. From the judgment thus rendered, the plaintiff has appealed, and assigns as error the court's action in directing the jury to return a verdict for the defendant. The facts upon which a decision of the question turns are practically undisputed, and are substantially as follows: In February, March and April, 1891, the

defendant had two sections on its road, the division line between them being near Rockwall, Texas. James Mellody, foreman of one of said sections, with his family, resided in the section house and boarded the employes of the two sections. F. C. Bryers, who had charge of the other section, occupied a room in the section house and boarded with Mr. Mellody. The section men roomed in what is termed the "bunk house," which was near the section house. The foremen and men were required to reside in or near the section house. The foremen had the same jurisdiction over the section house as they did over the railroad track, and it was their duty to keep the house clean, and such work of this character as was not done by the wife of Mr. Mellody was done by section men, an equal number being assigned for this purpose from each of the two sections. F. C. Bryers was living apart from his wife in February, 1891. Soon thereafter he instituted a suit for divorce against her at Palestine, Texas, and about March 21 or 22 he returned to Palestine to look after said suit. He had no leave of absence for this purpose, but wired the roadmaster that he was going on the day he left. While in Palestine he learned that there was an epidemic of what was called "black measles" in the city. His wife was at the time quarantined, said to be sick, with a guard about the house in which she was kept, and he was not permitted to see her except at a distance. He talked to her, however, at a distance of some fifty feet through an open window. In the course of the conversation she agreed that he might take their child, who was some four years old, back with him, if he would send it to her mother. This he agreed to do. He consulted his attorneys and made the necessary arrangements for taking the child back with him. He was advised that it would be necessary for him to get a health certificate, as other places had quarantined against Palestine. He consulted the city health officer, who went with him to the place where the child was staying, the house being some fifty feet from the house in which his wife was quarantined. After consulting the guard and others, who informed him the child had not been exposed to the disease, the city health officer consented that the child might be removed, and gave him and his father, Bryers, each a health certificate. The child was not permitted to go into the presence of his mother, but bade her good-bye from the place where Mr. Bryers had stood when talking with her. After getting the health certificates Bryers left with the boy for Rockwall. While on the train his child went near another child, whose mother said it had fever, and as she had but recently lost her husband as a result of black measles, she feared the little one was afflicted in the same way. After being advised of this, Bryers did not permit his boy to go near the sick child any more. Bryers took his child to the section house at Rockwall and requested Mrs. Mellody, wife of the other section foreman, to permit him to stay there a week or two until he could make arrangements to take him to his grandmother. M. J. Murray, appellee's roadmaster, also requested Mrs. Mellody to permit the child to remain there a short time, which she consented to do. Some fifteen days after the Bryers child was brought to the section house he was taken sick while his father was out on his section at work. As soon as the

father came in and was told of the boy's illness he went for a physician, securing Dr. J. E. Selby, who was not in anywise connected with the defendant. Dr. Selby was then a young physician. He was a graduate of the medical department of Vanderbilt University, and was at the time in the active practice of medicine. Bryers asked a number of people about Dr. Selby, and they recommended the doctor to him. That is the reason he was called in. Bryers heard that there was an epidemic of black measles at Palestine when he was there, but he did not hear that anyone there was afflicted with smallpox. Up to the time the child got sick Bryers did not tell Mrs. Mellody anything about it having been exposed to any contagious disease. While the Bryers child was ill his father received a letter from a party at Palestine, who was in no way connected with the defendant, stating that the child's mother had died of smallpox. Bryers read the letter to Dr. Selby, and stated to him that he brought the child from Palestine, and explained the circumstances connected with his being brought away, putting him in possession of all the facts he had in the matter. M. J. Murray, the roadmaster of appellee, who was the immediate superior of its foremen, Bryers and Mellody, was at the section house two or three days after the child took sick, and Bryers explained to him fully the circumstances under which he got the boy at Palestine, the prevalence of black measles there, etc. Murray was again at the section house on the day the disease was pronounced smallpox. At first Dr. Selby said the child had measles. He pronounced the case one of smallpox, according to his testimony, on the fifth or sixth day after his first visit, which was between the 2d and 4th of April. According to the testimony of Mrs. Mellody, mother of appellant, he pronounced it a case of smallpox nine or ten days after the child was taken sick, and according to the testimony of Bryers, twelve days after the child became sick. The child died the 13th day after it was taken ill. When the disease was pronounced smallpox, Dr. Selby advised that the boy and his father be quarantined and that the other inmates of the section house move therefrom, which was done. As a result of the exposure to the disease while the Bryers boy was in the section house the plaintiff, among others, took the smallpox, and he was, as a result thereof, made totally blind. He has not been able to see since that time, and his case is pronounced hopeless. He was, at the time, about four years old. Smallpox is considered a highly contagious and deadly disease. Black measles is a virulent form of common measles, and is a highly contagious, dangerous and often fatal disease.

The principal propositions contended for by appellant, as we understand it, are, in substance: (1) That appellee, in the operation of its railroad, having placed its section foreman Bryers in control of a part of its section house at Rockwall, and its section foreman James Mellody, father of appellant, who was then an infant, in another portion of said house, requiring said house to be maintained as a boarding house for the section gangs, and said foremen to reside therein with their respective families, it was the duty of Bryers to exercise ordinary care to keep his portion of the premises in a reasonably safe sanitary condition, and that if he negligently permitted the same to

become infected with smallpox, he, in doing so, was acting within the scope of his employment; and if said disease was thereby communicated to the appellant and was the proximate cause of his injuries, appellee was liable for such negligence and the damages suffered by appellant as a result thereof; (2) that if Bryers had such knowledge of his child's exposure to a dangerous contagion as would cause an ordinarily prudent person to believe that his child would probably take such contagious disease, defendant, under the circumstances, was guilty of negligence in permitting it to become and remain an inmate of the section house, and that whether or not Bryers had such knowledge was a question for the determination of the jury; (3) that if appellee had notice or knowledge that Bryers' child had been exposed to a deadly, dangerous and contagious disease, the fact that such disease was misnamed, medically, would not relieve appellee of the duty of guarding appellant against such disease: (4) that notice or knowledge on the part of appellee's roadmaster, Murray, under the facts of this case, was notice to and knowledge on the part of the appellee, and whether Murray became possessed of information which by the use of ordinary care, if acted upon by him, would have prevented appellant's injury, and he failed to so act, and appellant was injured thereby, appellee is liable for the damages so sustained by him; (5) that whether Murray, under the circumstances, was negligent, in not isolating Bryers' child from appellant to prevent appellant from becoming afflicted with the disease with which said child was afflicted, was a question for the jury.

It is not pretended that any agent or servant of appellee other than Bryers, its section foreman, and Murray, its roadmaster, knew or had any reason to suspect that Bryers' child when brought to the section house had been exposed to the contagious disease of smallpox or any other contagious or infectious disease, and whether knowledge on the part of said employes, or either of them, would constitute knowledge on the part of appellee is a question about which we have grave doubts. In the view we take of the case, however, it does not become necessary to determine that question, and hence we express no definite or authoritative opinion upon it.

We are of opinion that the practically uncontroverted testimony conclusively shows that neither Bryers nor Murray had any such knowledge that Bryers' child, before being placed in appellee's section house, had been so exposed to the disease of smallpox or "black measles," as would have authorized a finding by the jury that either was guilty of actionable negligence in placing said child in the section house or in allowing it to remain therein. It is true, the evidence shows that a disease known as "black measles" was prevalent in the city of Palestine; that Bryers' wife was sick and quarantined in that city; that Bryers found his child in Palestine and carried it from that place and put it in the appellee's section house, but that said child had been so exposed to the epidemic of smallpox or black measles then prevailing in Palestine as to render it probable that the child would contract the disease, or that if it had, appellant knew or had good reason to believe that it had been so exposed and was therefore guilty

of negligence in placing the child in the section house, is not warranted by the testimony. It appears without contradiction or dispute that the child had been isolated from those persons afflicted with the disease, and that Bryers had been informed that it had not been exposed to the contagion. He consulted the city health officer at Palestine, who went with him to the place where the child was staying and instituted an inquiry as to the exposure of the child to the disease in question, and, after a satisfactory investigation, gave Bryers and his child each a health certificate evidencing their freedom from exposure to any contagious disease that may have existed in Palestine at the time.

In regard to the meeting of Bryers' child with the sick child on the train, the evidence shows that Bryers acted as a prudent and cautious person would have done under the circumstances. When informed that this child was sick with a fever and that its mother entertained some fear that it had black measles, he promptly separated the children, who had been together but a moment, and thereafter kept them apart. There was nothing in this incident, in our opinion, that would warrant the conclusion that Bryers might have reasonably foreseen or anticipated that his child would contract some contagious and dangerous disease by reason of the momentary contact with the sick child, and therefore in putting his child in the section house failed to exercise ordinary care to prevent the infection of said house.

A careful examination of all the testimony upon the whole case has convinced us that it utterly fails to show actionable negligence on the part of either Bryers or Murray in respect to placing or allowing Bryers' child to remain in appellee's section house until its death, and therefore appellee can not be required to respond in damages for the injuries sustained by appellant on account of its said house becoming infected with smallpox by the presence of Bryers' afflicted child, or because said disease may have been communicated to appellant by actual contact with said child.

That the railway company would be liable for the spread of a contagious disease through the negligence of its servants acting within the scope of their authority, whereby another was injured as the proximate result of such negligence, is not at all questioned. Missouri, K. & T. Ry. Co. v. Wood, 95 Texas, 223; Missouri, K. & T. Ry. Co. v. Raney, 44 Texas Civ. App., 517 (99 S. W., 589). Clearly, Bryers was not acting within the scope of his authority so as to bind appellee up to the time of placing his child in the section house, and, in permitting the child to remain therein the short time which elapsed from the time he discovered the child was probably afflicted with smallpox and the time of its death, he can not fairly be charged with a failure to do what an ordinarily prudent person would have done under the circumstances of the situation.

Nor is the proposition that where there is any substantial evidence tending to show such negligence the issue must be submitted to the jury, denied. We hold that under the undisputed facts and circumstances of this case that as a matter of law no issue of negligence on the part of appellee through its employes Bryers and Murray, or either of them, or through any agent or servant whereby appellant

suffered the injuries complained of by him, was raised; that there being no issue of fact upon which liability of the appellee could have been predicated, the trial court properly instructed the jury to return a verdict for the appellee. If we are correct in the views expressed, the questions presented by the other assignments become immaterial.

The judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.