# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 26, 2025

Lyle W. Cayce
Clerk

No. 24-40531

_____

Lorie Williams, *Individually, and as Representative of* the Estate of David Williams, Sr.; David Williams, Jr.; Ryan Williams,

*Plaintiffs—Appellants*,

*versus*

Riley Wingrove; Tyson Foods, Incorporated,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:22-CV-357

_____

Before Stewart, Dennis, and Haynes, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

The district court dismissed this COVID-19 liability case on preemption grounds and for failure to state a claim. For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

I

David Williams, Sr. died after contracting COVID-19 while working

at a meatpacking plant operated by Tyson Foods, Inc. in Carthage, Texas.[1] Following his death, Lorie Williams (his widow), David Williams, Jr., and Ryan Williams brought suit in Texas state court against Tommy Brown, the plant manager; Micah Fenton, the plant safety manager; and Riley Wingrove, the coworker who transmitted the virus to Williams, Sr. The complaint asserted claims of negligence and gross negligence, alleging that Williams, Sr. contracted COVID-19 "because of unsafe working conditions at the meatpacking plant." Specifically, Plaintiffs alleged that "Tyson failed to take adequate precautions to protect its employees at the meatpacking [plant] against the spread of COVID-19" and that Brown and Fenton "were directly responsible for implementing a safe work environment" at the facility. Wingrove tested positive for COVID-19 on November 20, 2020, but continued reporting for work. Williams, Sr. then began experiencing symptoms of COVID-19 and died on December 12, 2020.

Wingrove, Brown, and Fenton removed the case to federal court under 28 U.S.C. § 1332. They argued that Brown and Fenton, both Texas citizens, were improperly joined and that their citizenship should be disregarded for purposes of diversity.[2] Plaintiffs moved to remand, maintaining that Brown and Fenton were properly joined as Defendants and that their Texas citizenship defeated complete diversity. The district court denied Plaintiffs' motion to remand, finding that Brown and Fenton were improperly joined because "[u]nder Texas law, the duty to provide

---

[1] At this stage, we "accept all well-pleaded facts as true." *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 199 (5th Cir. 2016).

[2] The citizenships of the parties are as follows: (1) Lorie Williams in her individual capacity (Hawaii); (2) Lorie Williams as representative of the Estate of David Williams, Sr. (Texas); (3) David Williams, Jr. (Colorado); (4) Ryan Williams (Hawaii); (5) Tommy Brown (Texas); (6) Micah Fenton (Texas); and (7) Riley Wingrove (Louisiana). Tyson, added into the suit later, is a citizen of Delaware and Arkansas.

employees with a safe workplace rests with the employer; it does not exist with employees and is not delegable to them." After finding improper joinder, the district court dismissed the claims against Brown and Fenton with prejudice and disregarded their Texas citizenship for the purpose of ascertaining whether complete diversity existed between the parties. That left Plaintiffs (citizens of Texas, Colorado, and Hawaii) completely diverse from Defendant Wingrove (a citizen of Louisiana). Consequentially, the district court found Defendants properly removed the suit from state court. In the same order, the district court granted Plaintiffs' motion to amend their complaint to add Tyson as a Defendant.

The remaining Defendants, Tyson and Wingrove, then filed separate successful motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court determined that Plaintiffs' claims against Tyson were preempted by the Poultry Products Inspection Act ("PPIA"), and that Plaintiffs failed to allege facts establishing that Wingrove owed a duty to Williams, Sr. that gave rise to a negligence or gross negligence cause of action. The district court denied leave to amend as futile, dismissed Plaintiffs' claims with prejudice, and entered a final judgment.

## II

A district court's determination that a party is improperly joined and the denial of a motion for remand to state court are questions of law reviewed de novo. *McDonal v. Abbott Lab'ys.*, 408 F.3d 177, 182 (5th Cir. 2005). "However, this court reviews a district court's procedure for determining improper joinder only for abuse of discretion." *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 513 (5th Cir. 2009) (citing *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309–10 (5th Cir. 2005)). We also review the district court's order on a motion to dismiss for failure to state a claim as well as the preemptive effect of the PPIA de novo. *In re Katrina Canal Breaches Litig.*,

495 F.3d 191, 205 (5th Cir. 2007); *Franks Inv. Co. LLC v. Union Pac. R. Co.*, 593 F.3d 404, 407 (5th Cir. 2010).

The denial of leave to amend as futile is reviewed de novo. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 430 (5th Cir. 2021).

## III

Plaintiffs argue that the district court erred by (1) denying their motion to remand; (2) granting Tyson's motion to dismiss on preemption grounds; (3) granting Wingrove's motion to dismiss; and (4) denying their motion for leave to amend their complaint.[3]

## A

Addressing jurisdiction first, we hold that Brown and Fenton were improperly joined and the district court properly denied Plaintiff's motion to remand. Title 28, United States Code, Section 1332(a)(1) provides that federal courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." This "requires 'complete diversity' of citizenship: A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003).

Relevant here, federal courts are prohibited from exercising jurisdiction over a suit in which any party has been improperly or collusively

---

[3] Defendants urge we dismiss the complaint under the Pandemic Liability Protection Act, even though the district court expressly declined to reach this issue. Because "appellate courts generally sit as courts 'of review, not first view,'" *Utah v. Su*, 109 F.4th 313, 320 (5th Cir. 2024), we do not address the PLPA issue. "It is not our role to address a question that the district court left unresolved . . . as both a matter of judicial restraint and sound policy." *Ashley v. Clay County*, 125 F.4th 654, 662 n.5 (5th Cir. 2025).

joined to manufacture federal diversity jurisdiction. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (citing 28 U.S.C. § 1359). Improper joinder may be established in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003). Neither party alleges there is actual fraud in the pleadings, so jurisdiction rests on Plaintiffs' ability to establish a cause of action against the non-diverse parties, Brown and Fenton. Ultimately, joinder is improper if "there is no possibility of recovery by the plaintiff against an in-state defendant." *Smallwood*, 385 F.3d at 573. To predict whether a plaintiff has a reasonable basis of recovery, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* To survive under Rule 12(b)(6), a claim must plausibly plead facts and reasonable inferences that, when accepted as true, allow a court to conclude that the defendant is liable under the controlling, substantive law—here, Texas state law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs argue the district court erred for two reasons. First, they argue that Brown and Fenton were properly joined because they had individual duties to prevent the spread of contagious diseases. Second, they argue that the district court's piecemeal dismissal of Brown and Fenton first and later Wingrove "for the same reason," violates our precedent as articulated in *Smallwood*, 385 F.3d at 575, as the proper remedy was remand.

Texas law is clear that "an employer does have a duty to use ordinary care in providing a safe work place." *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996) (citing *I.M. Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995)). "When the employer is a corporation," as Tyson is here, "the law charges the corporation itself, not the individual corporate officer, with the duty to

provide the employee a safe workplace." *Id.* The Supreme Court of Texas made it clear that "corporate officers and agents are subject to personal liability for their actions within the employment context only when they breach an independent duty of care." *Id.* (citing *Colwell*, 909 S.W.2d at 868).

Plaintiffs argue that Brown and Fenton breached an independent duty of care to prevent the spread of contagious disease, relying on *Missouri, K. & T. R. Co. v. Wood*, 66 S.W. 449 (Tex. 1902), for support. *Wood* is inapplicable to these circumstances. It involved a railroad company that contracted with its employees to provide medical care but did so negligently. This allowed an employee with smallpox to escape quarantine and infect others, who sued the railroad company for negligence. The Supreme Court of Texas held that "[w]henever the duty of restraining another arises, and the power of control over him exists, liability will follow upon a failure to perform the duty." *Id.* at 451. It highlighted that "when the railroad company undertook to treat [the sick employee] for the disease, . . . it assumed the duty of using ordinary care to prevent [the sick employee] from exposing himself in delirium . . . so as to communicate the disease to other persons." *Id.*

Here, there was no contractual obligation to provide medical care, nor was there negligent medical care rendered at a company hospital. Plaintiffs' reliance on *Wood*'s language that "there is a legal obligation on the sick and on those who have the custody of him," is misplaced because the railroad company in *Wood* undertook the responsibility of physically isolating and quarantining the sick employee and did so negligently. *Id.* According to Plaintiffs' allegations, neither Brown nor Fenton knowingly took on the responsibility to treat Wingrove or "[had] custody of him" in their capacity as safety managers at Tyson. *Id. Wood*'s unique facts simply do not apply here. Because Plaintiffs have no cognizable claim against Brown and Fenton, we hold they were improperly joined.

In the alternative, Plaintiffs raise a "common defense" argument, articulated in *Smallwood*, 385 F.3d 568. There, we held that "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant[s]"—here, Brown and Fenton— "necessarily compels the same result for the nonresident defendant," Wingrove, "there is no improper joinder; there is only a lawsuit lacking in merit." *Id.* at 574. In these circumstances, the "the court does not have the authority to do more; it lacks the jurisdiction to dismiss the case on its merits. It must remand to the state court." *Id.* at 576. Under this doctrine, Plaintiffs urge that remand of the entire case was the proper remedy because in their view, Brown, Fenton, and Wingrove were dismissed for the same reason: that they had no duty to prevent the spread of disease.

The claims here, however, were neither "the same" nor "equal," and the complaint bears out this distinction. Plaintiffs alleged Brown and Fenton failed to provide a safe work environment, requiring Williams, Sr. to work at the plant when it was not safe for him to do so, failed to provide personal protective equipment, failed to follow guidelines promulgated by the Centers for Disease Control and Prevention and the World Health Organization, failed to implement proper health screening protocols, failed to train employees, failed to provide adequate medical treatment, and allowed and required individuals who were infected with COVID-19 to continue to work at the plant. By contrast, Plaintiffs alleged that Wingrove was negligent in failing to screen himself for COVID-19 before starting work, failing to distance himself from other workers, coming to work after testing positive for COVID-19, and failing to take adequate precautions at work and distance himself from others even after testing positive for COVID-19. The complaint separately groups the allegations against Brown and Fenton from those against Wingrove. Because the same rationale—that there exists no

duty to prevent the spread of disease—did not "'equally' and 'necessarily' 'compel' dismissal of *all* claims against all the diverse defendants," the common defense theory does not apply. *Boone v. Citigroup, Inc.*, 416 F.3d 382 (5th Cir. 2005) (emphasis added).

Because we hold that Plaintiffs improperly joined Brown and Fenton, we find that the district court correctly disregarded their citizenship for the purpose of ascertaining its subject-matter jurisdiction. Plaintiffs were completely diverse from Wingrove,[4] so the district court properly denied Plaintiffs' motion to remand.

B

We next hold that Plaintiffs' state law negligence claims against Tyson are not preempted by the PPIA. The doctrine of preemption stems from the Supremacy Clause. U.S. CONST. art. VI, cl. 2. Any state law that conflicts with either a federal law or the Constitution is "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). In determining whether a state law or regulation is preempted, Congress's intent is the "ultimate touchstone." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Importantly, we must start "with the basic assumption that Congress *did not* intend to displace state law." *Maryland*, 451 U.S. at 746 (emphasis added). "Supremacy Clause analysis is classic 'tie goes to the state' jurisprudence, and the existence of an express preemption provision does not always plainly demarcate what the federal law expressly preempts." *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005).

---

[4] Because "[a] motion to remand is evaluated 'on the basis of claims in the state court complaint as it exists at the time of removal,'" *Turner v. GoAuto Ins. Co.*, 33 F.4th 214, 217 (5th Cir. 2022) (quoting *Bonin v. Sabine River Auth. of La.*, 961 F.3d 381, 385 (5th Cir. 2020)), and Tyson was not included in the initial state court complaint, the citizenship of Tyson is irrelevant.

No. 24-40531

The PPIA, administered by the U.S. Department of Agriculture's Food Safety and Inspection Service ("FSIS"), regulates the processing, inspection, distribution, labeling, and sale of poultry products sold in interstate commerce. The PPIA has an express preemption clause providing that "[r]equirements within the scope of this chapter with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this chapter may not be imposed by any State . . . ." 21 U.S.C. § 467e. Although we must begin with the PPIA's preemption clause as articulated by Congress, we also must "identify the domain expressly preempted." *White Buffalo Ventures, LLC*, 420 F.3d at 370 (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)).

The scope of preemption under the PPIA is a novel issue of law for this circuit, and there is an intra-district court split. On the one hand, *Glenn v. Tyson Foods, Inc.*, found that because "the PPIA's primary purpose is to protect consumers from unsafe meat, not to protect workers from disease . . . no state common law negligence claims based on improper workplace safety could be within the scope of the PPIA." 554 F. Supp. 3d 858, 864 (E.D. Tex. 2021). On the other hand, the district court in this case found that "plaintiffs' common law claims fall within the scope of the PPIA because they (1) concern an FSIS-established poultry-processing plant's premises, facilities, and operations, [and they] (2) create additional or different requirements than FSIS's existing disease-control regulatory regime."

*Glenn* has the better analysis. Beginning with Congress's intent as the "ultimate touchstone," *Medtronic, Inc.*, 518 U.S. at 485, the congressional declaration of policy for the PPIA states that the policy of Congress is "to provide for the inspection of poultry and poultry products and otherwise regulate the processing and distribution of such articles . . . to prevent the movement or sale in interstate or foreign commerce of . . . poultry products

which are adulterated or misbranded." 21 U.S.C. § 452. Consistent with Congress's declaration, the FSIS regulations promulgated pursuant to the PPIA only address infectious diseases or the garments employees must wear to the extent those conditions could result in "product adulteration and the creation of insanitary conditions." 9 C.F.R. § 416.5(a); § 416.5(c) (requiring "hygienic practices while on duty to prevent adulteration of product and the creation of insanitary conditions"); § 416.5(b) (requiring that garments be changed only so often as necessary to prevent "adulteration of product" or the "creation of unsanitary conditions").

The declaration of policy, bolstered by the focus of the FSIS regulations, makes it clear that the domain of the PPIA is food safety as well as any behavior that would cause "adulteration of product."[5] There may be workplace safety regulations that implicate food safety which are preempted by the PPIA. Tyson, however, makes no argument that there is a connection between the duty to prevent the spread of COVID-19 and food product safety. This is fatal. The power to preempt state law is "an extraordinary power in a federalist system," *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991), especially as here where the preemption arguments advanced would preempt the state's traditional ability to regulate "matters of health and safety" under their "historic police powers." *De Buono v. NYSA-ILA Med. and Clinical Servs. Fund*, 520 U.S. 806, 814 (1997). The district court erred in dismissing Plaintiffs' state law negligence claims against Tyson as preempted.

---

[5] Plaintiffs assert Texas state common law negligence and gross negligence claims against Tyson for its alleged failure to provide a safe work environment. These claims do not fall under the PPIA's regulation over "the inspection of poultry and poultry products . . . the processing and distribution of such articles . . . [and the prevention of] . . . the movement or sale in interstate or foreign commerce of . . . poultry products which are adulterated or misbranded." 21 U.S.C. § 452.

No. 24-40531

## C

We further hold that Wingrove had no individual duty to prevent the spread of disease. Plaintiffs argue the district court erred by dismissing Wingrove because Texas law establishes that he breached his individual duty to prevent the spread of disease, again relying on *Wood*, 66 S.W. at 450–51. *Wood*'s facts are wholly distinguishable from Wingrove's failure to screen himself for COVID-19 before going to work. *Wood* imposed liability on the employer rather than the infected employee, reasoning that "when [the employer] undertook to treat . . . for the disease, . . . it assumed the duty of using ordinary care to prevent . . . communicat[ion] [of] the disease to other persons." *Id.* at 450. Functionally, in the 123 years since the Supreme Court of Texas issued its decision, *Wood* has never led to any other decision holding that an individual duty to prevent the spread of disease exists, and the Plaintiffs cite to no other case that adopts an individual duty. We decline to stretch *Wood* beyond its specific facts. Thus, the district court did not err by dismissing Plaintiffs' claims against Wingrove.

## D

Finally, Plaintiffs requested leave to amend their complaint to provide "additional detail regarding Tyson's knowing conduct and causation." The district court denied leave as futile in light of its preemption ruling. Given that we hold Plaintiffs' claims are not preempted, we vacate the denial of leave to amend. *See Jim S. Adler, P.C.*, 10 F.4th at 430. "Whether an amendment is still requested is a decision for [Plaintiffs], and whether to allow it is for the district court to reconsider." *Id.*

## IV

For the foregoing reasons, we AFFIRM the denial of the motion to remand, AFFIRM the dismissal of Wingrove, and REVERSE the dismissal of Tyson. We VACATE the denial of Plaintiffs' motion for leave to amend.

No. 24-40531

And we REMAND for further proceedings not inconsistent with this opinion.

No. 24-40531

HAYNES, *Circuit Judge*, dissenting:

I respectfully dissent from the majority opinion as I would rule that we should send the case back to the district court to remand to the state court.

There is no question that the plaintiffs had a Texas citizen and the defendants had two Texas citizens so, on that note, no diversity exists. The district court found that the Texas defendants were improperly joined thus allowing the removal from the state court to the federal court. I agree with the Appellants that the district court misconstrued the claims against the Texas defendants as solely derivative of Tyson. As the Appellants note, "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc); *see also Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002) ("[R]emoval statutes are to be construed strictly against removal and for remand." (citation omitted)). The Appellants pleaded that these defendants had individual duties of care that were relevant to the death in this case. Accordingly, *Missouri, K. & T. Railway Co. v. Wood*, 66 S.W.449, 450–51 (Tex. 1902) applies, allowing the case against those defendants. According to the Appellants, the two Texas defendants owed individual duties "to prevent the spread of a contagious disease," *id.*, which is what is in play here. Thus, I disagree that *Wood* does not apply and, since it does, a remand to the state court is necessary.

At a minimum, given the disagreements over the effect of *Wood*, I respectfully submit that we should send a certified question to the Supreme Court of Texas to get a response to that issue so we could follow Texas law correctly.

Accordingly, I respectfully dissent.