564 P.2d 1227

Edna GRIMM and John Grimm, wife and husband, the surviving natural parents of John Grimm, Deceased, and Robert and Pat Bennett, husband and wife, Appellants,

v.

The ARIZONA BOARD OF PARDONS AND PAROLES, Walter Jacobs, Walter Michaels and Donald Simmons, members of the Arizona Board of Pardons and Paroles, Appellees.

No. 12775–PR.

Supreme Court of Arizona, In Banc.

April 11, 1977.

Stompoly & Even, P.C. by John G. Stompoly, Tucson, for appellants.

Fish, Briney, Duffield & Miller, P.C. by Clifford J. Hofmann, Tucson, for appellees.

GORDON, Justice:

Appellants brought a wrongful death and personal injury suit against appellees alleging that appellees' grossly negligent and reckless release of prisoner Mitchell Thomas Blazak caused the harm for which appellants sought redress. Appellants are Edna and John Grimm, surviving natural parents of John Grimm, deceased, and Robert and

Pat Bennett, husband and wife. Appellants sued the Board of Pardons and Paroles as an entity, as well as the individual members of the Board who are appellees in this review.

Appellees filed a motion for a protective order and for dismissal for failure to state a claim upon which relief can be granted. The trial court granted appellees' motion for a protective order and treated the motion to dismiss as a motion for summary judgment pursuant to Rules 56 and 12(c) of the Rules of Civil Procedure, 16 A.R.S. The court determined that there was no genuine issue as to any material fact and that defendants were entitled to judgment against plaintiffs on their complaint as a matter of law. The court ordered that: "defendants' Motion for Protective Order is granted and that defendants have judgment against plaintiffs on their Complaint, that the Complaint be dismissed on the merits and with prejudice as against defendants, and that defendants have and recover their costs incurred in this action." Appellants appealed from the judgment. The Court of Appeals, Division Two, affirmed the judgment of the Superior Court, 26 Ariz.App. 591, 550 P.2d 637 (1976). After denial of a motion for rehearing, appellants filed this petition for review. The opinion of the Court of Appeals is vacated. The judgment of the trial court is reversed and remanded.

■ In reviewing the granting of summary judgment, this Court views the evidence in the light most favorable to the appellants; that is, we will accept the allegations of the complaint as being true. *Cavanagh v. Kelly,* 80 Ariz. 361, 297 P.2d 1102 (1956); *Harbour v. Reliable Ins. Co.,* 94 Ariz. 344, 385 P.2d 220 (1963). The facts, viewed for purposes of this review, are as follows: Sometime prior to December 14, 1973, the appellees, members of the Arizona Board of Pardons and Paroles, released one Mitchell Thomas Blazak from the Arizona Prison before the expiration of his sentence. A.R.S. § 31–412 sets forth the criterion for release on parole:

"If it appears to the board of pardons and paroles, from a report by the department of corrections, or upon the application by the prisoner for a release on parole, that there is reasonable probability that the applicant will live and remain at liberty without violating the law, then the board may authorize the release of the applicant upon parole. * * * "

On December 15, 1973, Mitchell Blazak robbed the Brown Fox Tavern in Tucson, Arizona and during the robbery he shot and killed decedent, John Grimm, and seriously and permanently injured appellant, Robert Bennett. Blazak was subsequently convicted and sentenced to death for the murders of Grimm and the bartender at the Brown Fox Tavern. *State v. Blazak,* 114 Ariz. 199, 560 P.2d 54 (1977).

Appellants allege that the appellees' release of Blazak was in violation of the standard in A.R.S. § 31–412, *supra,* "in excess of the legal authority" of appellee Board members and "grossly negligent evidencing a reckless disregard for the rights and safety of the public." Appellants argue that certain facts support their negligence claims: Mitchell Blazak was released from the Arizona State Prison after completing approximately one-third of the sentence imposed on him for armed robbery and assault with intent to kill. His criminal record began in 1961, when, as a minor, he served a term in the Fort Grant Industrial School for burglary. In 1964 he was sentenced to prison for burglary and in 1965 he was returned to prison for parole violation. On September 9, 1966 he was released and in January 1967 was arrested for marijuana possession. The arrest which eventually led to the parole in question occurred on April 1, 1967 on charges of marijuana possession, armed robbery and assault with intent to kill. After psychiatric evaluations and several periods spent in the State Hospital, he was convicted and sentenced to prison.

As additional support for their allegation of negligence, appellants offer in their brief

several pages of information taken from the reports and diagnoses of eight different psychiatrists concerning Blazak's mental condition. We will summarize these opinions. Blazak is "an extremely dangerous person who should not be free in society until some major psychological changes take place." He is a paranoid schizophrenic whose psychosis prevents him from distinguishing between right and wrong and from controlling his conduct. He has never made an adequate adjustment to society for any prolonged period and is unlikely to change. He has a definite potential for violence. During at least one hospital stay he seemed to abandon his psychotic behavior but reverted to such behavior after his release back into society. We do not know how much of this information was available to the Board; but for the purpose of this review we will assume the information was known to the members of the Board.

The issues presented for review are:

1. Does appellants' failure to fulfill the requirements of A.R.S. § 12–821 preclude this suit?

2. Do the Arizona Board of Pardons and Paroles and its individual members enjoy absolute immunity from civil suit for its decision to grant parole?

3. If the Board has only qualified immunity, does that qualified immunity extend to grossly negligent or reckless release of a highly dangerous prisoner?

4. Was it error for the trial court to grant appellees' motion for a protective order?

### A.R.S. § 12–821

Insofar as a suit against the Arizona Board of Pardons and Paroles (as an entity) is a suit against the State of Arizona, A.R.S. § 12–821 is a bar to a suit against the Board until the statute has been complied with. A.R.S. § 12–821 reads:

"§ 12–821 *Authorization of action against state on tort or contract claim*

"Persons having claims on contract or for negligence against the state, which have been disallowed, may on the terms and conditions set forth in this article, bring action thereon against the state and prosecute the action to final judgment."

■ A negligence suit against the State is barred until a claim has been disallowed. Appellants did not fulfill the requirement of A.R.S. § 12–821 before the present suit was filed. Their brief states that they subsequently filed a claim which was disallowed and then refiled suit in Superior Court. We have no information about when these actions were taken. If the second suit is timely, that suit against a State body could be consolidated with this suit against the individual members of the Board. The dismissal against the Board of Pardons and Paroles as an entity, as a State body, was proper based upon the failure to fulfill the requirements of A.R.S. § 12–821 et seq. These provisions, however, have no application to suit against the individual members of the Board.

### ABSOLUTE IMMUNITY

The other ground for dismissal urged by appellees was failure to state a claim, based on their claim of absolute immunity to suit. This sort of immunity is often referred to as "quasi-judicial" immunity but it is more properly referred to as "public official" immunity which they enjoy while performing discretionary functions.[1] The term "quasi-judicial" can be misleading since this sort of immunity has a different historical basis from the immunity enjoyed by members of the judiciary. Although the latter-day reasons given for judges' immunity are similar

---

1. The usual rule is that government officials (at least those in the higher ranks) enjoy immunity from tort suit only for their "discretionary" functions but are liable in tort for their "ministerial" duties. This discretionary/ministerial dichotomy has often been criticized. See, e. g., Jennings, Tort Liability of Administrative Officers, 21 Minn.L.Rev. 263 (1937).

in part to the reasons given for officials' immunity, the public officials who enjoy this immunity are almost invariably in administrative positions—members of the executive branch of government or members of bodies which do not belong strictly to any of the three traditional branches of government. This official immunity is not analyzed in the context of a judicial setting but in the context of the administrative setting. The discretion of an administrative official is not that of a judge. By training and tradition, the trust placed in the judgment of a judge is not the same as that of an administrative officer.

It is generally agreed that the origin of official immunity (as well as of sovereign immunity) lies partly in the maxim "the King can do no wrong." Later the immunity of the sovereign from suit was modified by the Anglo-American common law principle that no person is above the law; the sovereign's officers were liable for their misconduct.[2] Such liability has gradually eroded in recent times until many courts formulate the rule that public officials are absolutely immune from suit at least for their discretionary acts. It is unclear why this change came about since it is a perversion of earlier reasoning.

Over the years the potential liability of public officials as it related to what are termed "discretionary" functions became associated with—almost equated with—the traditional absolute immunity of judges. Until recently, however this so-called quasi-judicial immunity was not a general immunity. See generally, 2 Harper & James, Torts § 29 (1956, Supp.1968). The modern trend in the United States has been to grant more and more immunity to public

officials. See generally Gray, Private Wrongs of Public Servants, 47 Cal.L.Rev. 303 (1959). This development has occurred in the context of logical inconsistencies and often with only cursory reasoning.[3]

One aspect of "quasi-judicial" immunity which is clear is that it is not mandated by the Constitution, but rather public policy is given as the impetus. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

Since the reasons for official immunity are almost always discussed in relation to judicial immunity we must examine the rationale underlying the absolute immunity of judges to see if it applies equally to other public officials. The policy reasons traditionally advanced for absolute judicial immunity are:

1. Save judicial time which would otherwise be spent defending suits.

2. Prevent undue influence from the threat of suit which could discourage fearless independent action.

3. Avoid deterring competent people from taking office.

4. Importance of an independent judiciary in the American scheme.

5. Need for absolute finality, somewhere, in the resolution of disputes.

6. Existence of adequate alternative remedies in procedural safeguards such as change of venue and appellate review.

7. Duty is owed to the public in general.

8. Possible bias of judges toward their own immunity.

Jaffee, Suits Against Governments and Officers: Damage Actions, 77 Harv.L.Rev. 209, 215 (1963).

---

2. The usual authority is Dicey, The Law of the Constitution 189 (8th Ed. 1915): "In England the idea of legal equality, or of the universal subjection of all classes to one law administered by the ordinary Courts, has been pushed to its utmost limit. With us every official, from the Prime Minister down to a constable or a collector of taxes, is under the same responsibility for every act done without legal justification as any other citizen." Quoted in, e. g.,

3. One critic, contrasting the United States trend with the British Commonwealth trend to restrict quasi-judicial immunity, called the American argument for absolute immunity a "wry blend of fairy tale and horror story." Gray, *supra* at 339.

9. Unfairness of requiring an opinion and the exercise of judgment to which is given special deference and then subjecting the person to personal consequences depending upon the opinion of another.

10. Historical basis, the original reason for which has been lost.

In deciding which of these reasons apply to liability of administrative officials, it is clear that reasons 4 and 10 are totally irrelevant. Number 6 is not only inapplicable but is actually supportive of abolishing official immunity: while certain due process requirements apply to some administrative actions, the major judicial safeguard of appellate review is often totally lacking. This lack, in fact, is one of the major reasons for the growing criticism of bureaucracy in America. Reason 9 is much less compelling for administrative officials because their opinions receive less deference and because the basis of tort law is that the defendant be subjected to personal consequences depending upon the opinion of others as to his actions. Reasons 1 and 5 are also less compelling outside of the judicial context. Reason 7 is not always applicable to non-judicial officials because there are circumstances which narrow the duty to individuals, when the action and consequences are similar to the usual non-governmental tort, for example. *See, e. g., Fair v. United States,* 234 F.2d 288 (5th Cir. 1956). Reasons 2 and 3 are most frequently used to justify official immunity. E. g., *Industrial Commission v. Superior Court,* 5 Ariz.App. 100, 423 P.2d 375 (1967); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (Powell, J., dissenting).

■ It is clear that the policy reasons for official immunity are much weaker than for judicial immunity. Thus logic requires a lesser immunity; for immunity deprives individuals of a remedy for wrongdoing and should be bestowed only when and at the level necessary. We hold that absolute immunity for public officials in their discretionary functions acting in other than true judicial proceedings is not required and, indeed, is improper. Support for our holding is found in *Wood v. Strickland, supra,* in which the United States Supreme Court found that school board members enjoy only a limited immunity to suit under 42 U.S.C. § 1983 (the so-called "constitutional tort") in the context of school discipline. Support can also be found implicitly in a line of federal court decisions dealing with airport traffic controllers. E. g., *Eastern Air Lines v. Union Trust Co.,* 95 U.S.App. D.C. 189, 221 F.2d 62, *cert. denied sub nom., United States v. Union Trust Co.,* 350 U.S. 911, 76 S.Ct. 192, 100 L.Ed. 799 (1955). These decisions distinguish between discretionary decisions made at the policy level and those made at the operational level. Immunity is granted only for policy level functions because strong public policy arguments apply: for example there are no reliable criteria for judging a major policy decision and there is a need for fearless decision-making at that level.

The parole statute itself, A.R.S. § 31–412, quoted *supra* at page 1229, also provides support for our holding of partial immunity. Parole may be authorized "[i]f it appears to the board * * * that there is reasonable probability that the applicant will live and remain at liberty without violating the law * * *." These guidelines imply that parole may not be authorized if there is no such reasonable probability, and therefore immunity should adhere only for acts within the guidelines. The board members should not bear liability for taking the risk allocated to them as a statutory duty. If it reasonably appears that the applicant is a good risk, the board members should not be liable if it turns out that they guessed wrongly.

■ We are persuaded that public needs are best served by a qualified rather than absolute immunity for parole board members in relation to their parole decisions. In many bureaucratic and administrative decisions there are few or no safeguards to take care of wrong, harmful decisions. Members

of the Legislature may be voted out of office—as may judges in Arizona. Judges may be reversed by an appellate court. The Board of Pardons and Paroles, however, has had no check on its unbridled discretion. The question arises whether such unbridled discretion is appropriate in our modern society.

■ When the reason for a rule no longer exists, the rule itself should be abandoned. *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963). In *Wilson v. Hirst*, 67 Ariz. 197, 193 P.2d 461 (1948), this Court extended the immunity enjoyed by judges for their judicial acts to other public officials performing a judicial function while acting in a quasi-judicial capacity. This rule has been applied in Arizona to give absolute immunity to officials for judicial—or discretionary—decisions. After a thorough re-evaluation of this rule, we now hold that it must be abandoned as an unconditional rule of law in Arizona, and *Wilson v. Hirst, supra,* as well as all prior decisions to the contrary, are hereby overruled. While leaving intact the absolute judicial immunity enjoyed by participants in judicial proceedings, we now abolish the absolute immunity previously granted to public officials in their discretionary functions.

We have come to this conclusion because of the increasing power of the bureaucracy—the administrators—in our society. The authority wielded by so-called faceless bureaucrats has often been criticized. Comparing the relatively small number of judges with the large numbers of administrators, the idea of fearless, unbridled decision-making becomes less appealing. While society may want and need courageous, independent policy decisions among high level government officials, there seems to be no benefit and, indeed, great potential harm in allowing unbridled discretion without fear of being held to account for their actions for every single public official who exercises discretion. The more power bureaucrats exercise over our lives, the more we need some sort of ultimate responsibility to lie for their most outrageous conduct. There may even be some deterrent value in holding officials responsible for shocking outrageous actions.[4] In any case, democracy by its very definition implies responsibility. See generally Laski, The Responsibility of the State in England, 32 Harv.L.Rev. 447 (1919). In this day of increasing power wielded by governmental officials, absolute immunity for nonjudicial, nonlegislative officials is outmoded and even dangerous.

## IMMUNITY OF DEFENDANTS

We must now decide whether the qualified immunity properly enjoyed by officials such as parole board members allows liability under the circumstances of this case.[5] For a public official to be liable at all, there must be a duty owed to the plaintiff. Then the required standard of care must be shown to have been breached, and an injury proximately caused by the breach must be shown. *Massengill v. Yuma County*, 104 Ariz. 518, 456 P.2d 376 (1969).[6]

In *Massengill, supra,* we said the general rule for public agencies or officials is that when a duty is owed the public then a breach of that duty is a public, not an individual, injury and can be redressed only by some form of public prosecution. We cautioned, however, that there are situations in which the public agency or official can narrow an obligation owed to the general public into a special duty to an individual and for a breach of this duty can be

---

4. The Legislature, of course, may choose to indemnify officials, which might lessen the deterrent effect but would still compensate the victim.

5. We emphasize that we are deciding only under the alleged facts of this case.

6. Obviously all the elements of a tort claim would have to be proved at trial before appellants could recover. The issue in this case, however, involves a summary judgment and therefore we need deal only with duty and the standard of care.

liable in damages. *E. g. Veach v. City of Phoenix*, 102 Ariz. 195, 427 P.2d 335 (1967), (city operated water system).

■ The Board of Pardons and Paroles in this instance has narrowed its duty from one owed to the general public to one owed to individuals by assuming parole supervision over, or taking charge of, a person having dangerous tendencies. (See, § 319 of the Restatement, Second of Torts discussed *infra*.) This situation can be distinguished from that in *Massengill* where the public officials merely failed to act or take charge of the automobile drivers who later caused injury and death to the plaintiffs. Here the Board members voluntarily assumed responsibility for a highly dangerous person who could be paroled only by Board action. It is black letter tort law that while inaction is not normally a basis for liability, negligent performance of a duty voluntarily undertaken may be a basis for liability.

We may look to the Restatement of Torts, Second for guidance on the issue of the duty owed by the members of the Board of Pardons and Paroles when they decide to release a prisoner. *MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211 (1958). Section 319, "Duty of Those in Charge of Person Having Dangerous Propensities" states:

> "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

The illustrations to § 319 involve the negligent release of an infectious patient from a private hospital for contagious diseases (based, inter alia, on *Missouri, K. & T. R. Co. v. Wood*, 95 Tex. 223, 66 S.W. 449 (1902) and the escape of a homicidal maniac patient due to negligence of guards employed by a sanitarium for the insane (based, inter alia, on *Austin W. Jones Co. v. State*, 122 Me. 214, 119 A. 577 (1923)). *Austin W. Jones Co. v. State, supra*, upheld the state's liability under a doctrine of respondeat superior for the property damage caused by a

patient negligently released by the state hospital superintendent. The serious potential for harm in such situations mandates liability for injury to individual members of the public despite the fact that the duty could also logically be viewed as one owed to the public in general. The reasoning of § 319 is applicable to the instant circumstances.

■ We hold that members of the State Board of Pardons and Paroles owe a duty to individual members of the general public when the Board decides to release on parole a prisoner with a history of violent and dangerous conduct toward his or her fellow human beings. The standard of care owed, however, is that of avoiding grossly negligent or reckless release of a highly dangerous prisoner. If the history of an applicant for parole shows a great danger of violence to other humans, the members of the Board are under a duty to inquire further before releasing the prisoner. With medical and psychological evaluations, plus the day-to-day evaluations of the prison personnel, the Board should have access to sufficient information to make an informed decision. If the entire record of the prisoner reveals violent propensities and there is absolutely no reasonable basis for a belief that he has changed, then a decision to release the prisoner would be grossly negligent or reckless.

■ Implicit in appellant's complaint and brief is the allegation that the Board had before it no evidence to support "[a] reasonable probability that [Blazak] will live and remain at liberty without violating the law." A.R.S. § 31–412. If such is the case and all the information before the Board negates the probability of lawful conduct while on parole, the Board cannot ignore such evidence. We emphasize that no liability is to be imposed when the evidence is conflicting or contradictory, that is, when reasonable minds could differ.

We believe that a limited immunity for members of the Board of Pardons and Pa-

roles with liability only for the grossly negligent or reckless release of a highly dangerous prisoner strikes the proper balance between the competing interests. The public has an interest in protection from premature release of highly dangerous prisoners as well as an interest in holding public officials responsible for outrageous conduct. The Board members have an interest in freedom from suit for reasonable decisions.[7]

## PROTECTIVE ORDER

Insofar as the trial court granted appellees' protective order on the basis of immunity from suit, the order was error. Whether or not there is another basis for issuing a protective order must be determined by the trial court upon remand. The trial court, of course, will make its decision in light of this opinion as well as statutory and common law privileges generally applicable to discovery.

Because this case comes to us on appeal from summary judgment, we do not have all the facts before us which will be before the trial court on remand. Nevertheless the partes have raised some issues on appeal which will arise again on remand, and so we must deal with them in this opinion.

■ In support of the protective order, appellees advance several arguments on appeal. First, they argue that their immunity to suit supports the protective order but that argument, of course, no longer obtains in light of our holding *supra*. Second, they argue that two Court of Appeals' opinions dealing with prisoner's challenges to denial of parole are dispositive of the issue. These opinions hold that since parole is a matter of grace and not of right, the Board of Pardons and Paroles is not required to disclose its reasons for denying parole, *Witt v. State ex rel. Eyman,* 18 Ariz.App. 120, 500 P.2d 905 (1972), and that courts have the power to review Board proceedings to determine "the presence or absence of due

process in the conduct of [a] hearing on commutation," *State ex rel. Arizona State Board of Pardons and Paroles v. Superior Court,* 12 Ariz.App. 77, 80, 467 P.2d 917, 920 (1970). Neither decision is pertinent here. Because a prisoner has no right to parole, or other such Board action, and therefore the reviewing court has no use for the information sought by the prisoners (i. e., no relevancy), a protective order was proper. A plaintiff in a personal injury and wrongful death lawsuit has a right to any relevant information that is not otherwise privileged, and in this case at least some of the information sought by appellants is clearly relevant. Here appellants seek not to modify nor reverse the Board's decision but to predicate liability on it, and therefore the reasoning in the above cases is inapposite.

■ Appellees' third argument is based upon a California Court of Appeals decision, *Runyon v. Board of Prison Terms and Paroles,* 26 Cal.App.2d 183, 79 P.2d 101 (1938). Several factors make *Runyon* inapplicable here: the issue was whether certain letters and documents voluntarily sent to the Board and not required by law to be sent or filed were open to *indiscriminate* inspection by any citizen; the court held that such material was not open to indiscriminate inspection because the Board's need for all possible information meant that much of that information could be had only upon a promise of confidentiality; the court also held that the trial court was justified in finding that the "facts alleged in the petition were legally insufficient to establish such a beneficial interest on the part of petitioner as would entitle him to the issuance of the writ [of mandamus]." 79 P.2d at 102. Appellants seek disclosure specifically to support their claim against the government, and the confidentiality problem may be met under the traditional infor-

---

7. We make no mention of the prisoner's interests because parole is a matter of grace and not of right.

mant's privilege which, with certain exceptions, protects the identity of the informant but not generally the contents of the communication. *City of Phoenix v. Peterson,* 11 Ariz.App. 136, 462 P.2d 829 (1969); 8 Wigmore, Evidence, § 2374 (McNaughton rev. 1961). *Runyon* is thus inapplicable to this case.

■ Appellees' fourth argument is based on *United States v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). Plaintiffs in *Morgan* challenged an order of the Secretary of Agriculture on the ground that he had not given proper weight to certain facts (of which he had been apprised) in making his decision. The Court held the Secretary had been responsibly conscious of these facts and had duly weighed them, and that is the extent of the reviewing court's duty. The Court held it is not the function of a court to probe the mental processes of the Secretary; the Secretary should not have been subjected to lengthy examination concerning the process by which he reached his conclusion, including the manner and extent of his study of the record and his consultation with subordinates. We agree with this reasoning and find it applicable to appellees. In light of our holding that the Board may be held liable only for grossly negligent or reckless release of a prisoner, any inquiry into the mental processes of a parole decision is improper. Insofar as the requested depositions were to inquire into the deliberations, discussions and communications during Board proceedings, a restricted protective order would be proper. Appellants' inquiry is limited to discovery of information, documents and reports which were before the Board members when they made their decision to parole Blazak.

Finally appellees argue that the public interest may be a ground for prohibiting inquiry into certain matters during discovery, citing 4 Moore's Federal Practice ¶ 26.20 (2d ed. 1976). Although not cited by appellees, this Court in *Mathews v. Pyle,* 75 Ariz. 76, 251 P.2d 893 (1952) discussed the relation between the right to inspect documents in public offices and the best interests of the state. Mathews, Editor of the Arizona Daily Star, filed a petition for mandamus against the Governor seeking the right to inspect certain documents in the Governor's office. We held that the documents sought came under the "other matters" provision of § 12–412 A.C.A.1939, "Records open to the public * * *" (pertinent subject matter now covered in A.R.S. § 39–121), and were subject to inspection by any citizen unless they were "confidential [and therefore privileged] or of such a nature that it would be against the best interests of the state to permit a disclosure of their contents." 75 Ariz. at 80, 251 P.2d at 896. Whereas *Mathews* dealt with the right of any citizen to inspect documents, a subsequent Court of Appeals decision provided guidelines when the individual seeking discovery has a particularized interest based on a tort action. *City of Phoenix v. Peterson, supra.* Plaintiff in *Peterson* sought discovery of certain information contained in a Police Department personnel file. The Court of Appeals held that although the personnel records sought were confidential as to the public at large, *Mathews* does not prohibit the production of at least their essence; plaintiff could discover the reprimands and other such information which he sought but confidential informants and irrelevant parts could be deleted. These two decisions should provide guidance to the trial court on remand when deciding whether the public interest or confidentiality mitigates against discovery in whole or in part.

■ As we stated *supra,* the trial court on remand may have to determine the propriety of a protective order covering any or all discovery sought by appellants. It is the court, and not the Board of Pardons and Paroles, who is to make the final decision on privilege or confidentiality. *Mathews v. Pyle, supra.* In this determination the trial court should apply the reasoning of this

decision as well as statutory and common law rules generally applicable to discovery, keeping in mind the spirit and purpose of the discovery rule 26, 16 A.R.S. Rules of Civil Procedure.

## CONCLUSION

■ Because we hold that members of the Board of Pardons and Paroles have only partial immunity from suit, the trial court's grant of summary judgment for appellees was error. Appellants should have a chance to show that the Board's release of Mitchell Thomas Blazak was grossly negligent or reckless as well as a chance to prove the other elements of their personal injury suit. The opinion of the Court of Appeals, Division Two is vacated. The judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.

CAMERON, C. J., and HOLOHAN, J., concur.

HAYS, Justice, dissenting.

Beware, oh unsuspecting trial judge, that when your decision to place a felon on probation goes horribly awry, the majority of my brothers sitting in cloistered ivory tower call your action gross and subject you to the consequences thereof. I hasten to concede that the majority opinion does not say this but logic tells me that the discretionary acts of the parole board need no less protection than those of the sentencing judge. There may be boards or commissions, bastions of bureaucracy, which should not be accorded the protection of quasi-judicial immunity, but the parole board is hardly one of these.

The words of Justice Udall in *Wilson v. Hirst*, 67 Ariz. 197, 193 P.2d 461 (1948), which the majority overrules, are as true now as they were then:

"[W]e can also say that we are well aware of the fact that in thus shielding public officers, who act strictly within their jurisdiction in a quasi-judicial capacity, against actions of this sort the rule may work hardship and injustice in individual cases. But there is no middle ground to be occupied in the matter; either all of such suits are to be tolerated or none. The court may occasionally be confronted with the not-unusual situation that calls for subordination of the rights of the few to the interests of the whole body of the public. The doctrine of immunity is not for the benefit of the few who might otherwise be compelled to respond in damages. It is for the benefit of all to whom it applies, that they may be free to act in the exercise of honest judgment, uninfluenced by fear of consequences personal to themselves. This again is not for their personal advantage or benefit. It is only that they may be enabled to render a better public service." 67 Ariz. at 202, 193 P.2d at 464.

The limitation of actions against discretionary acts of quasi-judicial bodies to gross negligence has no less a chilling effect on the decisions of those bodies. Even if the vagueness of the line between gross and ordinary negligence does not make for mischief, the harassment of numerous lawsuits against quasi-judicial bodies will be ever present. Again we will find log-jammed courts overseeing the actions of boards and commissions hesitant to act for fear of being second-guessed. Heretofore, the Arizona Supreme Court has been reluctant to assume the activist role, as the overseer of all functions of government and society. Not so here!

The majority opinion does not overrule *Massengill v. Yuma County*, 104 Ariz. 518, 456 P.2d 376 (1969), but in the attempt to distinguish that case, it casts considerable doubt on its viability. The opinion says that the Board of Pardons and Paroles, in assuming its statutory duty of parole supervision, has narrowed its duty from one owed the general public to one owed to individuals. We are not impressed by this distinction, if such it is.

As a final word, we notice a footnote indicating that appellants will have to prove at trial all the elements of a tort claim. The subject has not been addressed so we shall leave our comments on the problems of proximate cause herein to a later day.

I dissent.

STRUCKMEYER, V. C. J., concurring.

I concur in the dissent of Justice Hays.