690 P.2d 79

Adolfo ACEVEDO, Jr., a minor by his next friend and father, Adolfo ACEVEDO; Robert G. Fuell, Tammy W. Fuell, and Liberty L. Hurst, all minors, by their next friend and mother, Rosalie A. Fuell; Ventura Valenzuela, Jr., and Ruben Valenzuela, minors, by their next friend and father, Ventura Valenzuela, Plaintiffs/Appellants,

v.

The PIMA COUNTY ADULT PROBATION DEPARTMENT; Stephen C. Emslie, Charles R. Moffett, William G. Johnson, Robert E. Long, as employees of the Pima County Adult Probation Department; the County of Pima, a body politic; and the State of Arizona, Defendants/Appellees.

No. 2 CA–CIV 4813.

Court of Appeals of Arizona, Division 2.

Nov. 16, 1983.

Gonzales & Villarreal, P.C. by Richard J. Gonzales, Tucson, for plaintiffs/appellants.

Robert K. Corbin, Atty. Gen. by Robert F. Ellig, Asst. Atty. Gen., Phoenix, for defendant/appellee State of Ariz.

Stephen D. Neely, Pima County Atty. by Michael D. Alfred, Deputy County Atty., Tucson, for defendant/appellee Pima County.

OPINION

BIRDSALL, Judge.

The issue presented in this case is whether an adult probation officer is protected by judicial immunity from liability for negligently supervising a convicted felon placed on probation. This appeal is from a summary judgment in favor of defendants/appellees and against plaintiffs/appellants. We affirm.

The action was commenced by Adolfo Acevedo as next friend and father of Adolfo Acevedo, Jr., Rosalie A. Fuell as next friend and mother of Robert G. Fuell, Tammy W. Fuell and Liberty Hurst, and Ventura Valenzuela as next friend and father of Ventura Valenzuela, Jr. and Ruben Valen-

zuela. Defendants named in the action included the Adult Probation Department; Stephen C. Emslie, Charles R. Moffett, William G. Johnson, and Robert E. Long, as employees of the department; Pima County and the State of Arizona.

We view the facts in the light most favorable to the appellants. In 1974 Jesse Christopher was charged with two counts of rape, two counts of lewd and lascivious acts, and two counts of molestation involving his daughter and step-daughter. Pursuant to a plea agreement, he was placed on 10 years' probation, confined to the borders of Pima County, was to continue in a mental health program and was placed under the supervision of the probation department.

Again in July 1978, Christopher was charged with four counts of child molestation involving his three step-sons. In order to spare the children the ordeal of a trial, a plea agreement was made. In March 1979 pursuant to this agreement, Christopher was placed on 20 years' probation under the supervision of the probation department and was ordered confined to the Pima County Jail for two years as a condition of probation with work furlough being available at the discretion of the probation department. Additionally, Christopher was ordered to have no contact whatsoever with children under the age of 15 and he was to continue his psychological therapy. Stephen Emslie was assigned as his probation officer in November 1979. In October 1980 Christopher was released from custody and at that time his case was transferred to probation officer Charles Moffett.

Subsequently, Christopher obtained employment from Adolfo Acevedo. Christopher lied to Acevedo, saying that he was on work furlough from the Pima County Jail for having assaulted his wife's boyfriend. Christopher presented Acevedo with an "Employer Agreement" form from the Pima County Corrections Center which explained the conditions of his employment under the program and indicated that Christopher had undergone extensive screening to become eligible for the program. Acevedo signed and returned the form to Christopher.

During this same time, Christopher was befriended by Ventura Valenzuela who was also doing time at the Pima County Jail as a condition of probation on an aggravated assault charge. Following the time that both Christopher and Valenzuela were released, Christopher sought to rent a room from Valenzuela. Valenzuela's probation officer at this time was appellee Emslie, and Emslie knew where Valenzuela was living with his wife and five children who ranged in age from three to nine years old.

Valenzuela advised Emslie that Christopher wanted to rent a room from him because Valenzuela was also on probation and he was not allowed to have contact with other known felons. Given his conditions of probation, Valenzuela felt that it was incumbent upon him to advise Emslie and obtain his permission before entering into any rental agreement.

Emslie gave Valenzuela permission to rent a room to Christopher. Both Acevedo and Valenzuela asserted by affidavit that they were never advised of the circumstances surrounding Christopher's probation or the conditions of his probation. On the other hand, Emslie asserted in his affidavit that in May 1980, he had advised Valenzuela that Jesse Christopher was on probation for child molestation and that he could not have contact with children under 15 years of age.

Beginning in the summer of 1981 and continuing through the date of his arrest in September 1981, Christopher sexually assaulted the Valenzuela and Acevedo children as well as their playmates. As a result of the foregoing crimes, Christopher's probation was revoked and he was sentenced to life imprisonment. Additionally, Christopher was charged with six counts of molestation of a child in relation to the most recent assaults and he pled guilty to all counts and received concurrent life terms.

Subsequently, the appellants brought suit for damages in Pima County Superior Court alleging that the appellees had negligently supervised Christopher, a probationer in their custody, in violation of a specific

court order and applicable statutory law. Appellees filed motions to dismiss and/or for summary judgment. The trial court granted appellees' motion for summary judgment on the ground that appellees were immune from liability.

Although three issues were presented for our consideration on appeal, we find the issue regarding judicial immunity dispositive and need not address the others.

Appellants contend that the trial court erred in granting appellees' motion for summary judgment because, they argue, absolute judicial immunity does not extend to probation officers who are required to perform ministerial functions in carrying out their supervisory duties. We disagree.

Absolute immunity for participants in judicial proceedings is well established:

"This Court early held that judges of courts of superior or general authority are absolutely priviledged [sic] as respects civil suits to recover for actions taken by them in the exercise of their judicial functions, irrespective of the motives with which those acts are alleged to have been performed, ... and that a like immunity extends to other officers of government whose duties are related to the judicial process." *Barr v. Matteo*, 360 U.S. 564 at 569, 79 S.Ct. 1335 at 1338, 3 L.Ed.2d 1434 at 1440 (1959)."

Although the immunity traditionally granted public officials has been diminished by recent Arizona case law, *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982); *Grimm v. Arizona Board of Pardons and Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977); *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963), judicial immunity has remained unscathed. In *Grimm, supra*, where the Arizona Supreme Court abolished immunity for discretionary acts of public officials, the court stated that they were "... leaving intact the absolute judicial immunity enjoyed by participants in judicial proceedings...." 115 Ariz. at 266, 564 P.2d 1227. The court further distinguished judicial and public official immunity: "The discretion of an administrative official is not that of a judge. By training and tradition, the trust placed

in the judgment of a judge is not the same as that of an administrative officer." 115 Ariz. at 264, 564 P.2d 1227. Similarly, the court in *Ryan, supra*, stated, "... we must hasten to point out that certain areas of immunity must remain. The more obvious of such immunities are legislative immunity, judicial immunity, and high-level executive immunity." 134 Ariz. at 310, 656 P.2d 597.

It is obvious from both statute and case law that probation officers are part of the judiciary. *See* Chapter 2, Title 12, A.R.S. Specifically, Art. 6, A.R.S. § 12–251, et seq. provides that chief adult probation officers shall be appointed by and serve at the pleasure of the presiding judge. The chief adult probation officer, with the approval of the presiding judge of the superior court, appoints deputy probation officers and support staff to provide presentence investigations and supervision services to the superior court. Additionally, § 12–253(2) provides that the adult probation officer shall "Exercise general supervision and observation over persons under suspended sentence, *subject to control and direction by the court*." (Emphasis supplied)

Clearly, the probation officer "stands in the shoes" of the superior court judge in carrying out the order of the court and is answerable only to the judge. The judge cannot supervise his probationers because of time constraints. The probation officer performs the duty for him.

Furthermore, in *Broomfield v. Maricopa County*, 112 Ariz. 565, 544 P.2d 1080 (1975), our supreme court stated that probation officers are part of the judicial function and that the judiciary has inherent power of control over probation officers. The court further noted, quoting from *Smith v. Miller*, 153 Colo. 35, 384 P.2d 738 (1963), that this inherent power of the court was necessary because the courts must be "... independent, unfettered, and free from directives, influence or interferences from any extraneous source." 112 Ariz. at 567, 544 P.2d 1080.

Since the *Grimm* decision, we have applied absolute judicial immunity to a clerk

of the superior court who carried out a court order to the detriment of the plaintiff. *Yamamoto v. Santa Cruz County Board of Supervisors*, 124 Ariz. 538, 606 P.2d 28 (App.1980). Appellants argue that the facts of the instant case are distinguishable from *Yamamoto* because here, appellees were negligent in carrying out an order of the court. From this they contend if the appellee had complied with the letter of that order, and injury resulted, the probation officer could not be liable for such injury because the judge who made the order was protected by the immunity defense. It is further argued by appellants that since the officers did not comply with the order but rather performed it negligently and because compliance was merely ministerial, the probation officer can be held liable.

■ The appellants place great weight on their premise that the appellee probation officer was carrying out a ministerial rather than a discretionary duty. Initially, it should be noted that the discretionary/ministerial dichotomy is, in all likelihood, no longer a relevant distinction to be made when discussing public official immunity. *See Ryan, supra.* Even if we were to assume that the probation officers' activities in the instant case were ministerial in nature, we find support for the grant of judicial immunity under these circumstances. In *Yamamoto, supra,* the court stated that the court clerk's duties are essentially ministerial, yet nonetheless held that she was protected by the doctrine of judicial immunity. Similarly, in *Lockhart v. Hoenstine*, 411 F.2d 455 (3rd Cir.1969), U.S. cert. denied, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969), a prothonotary (clerk) of superior court in refusing to file certain papers was protected by judicial immunity, the court stating, "In addition to the recognized immunity enjoyed by judicial and quasi-judicial officers ... there exists an equally well-grounded principle that any public official acting pursuant to court directive is also immune from suit." 411 F.2d at 460.

We recognize that there is authority to the contrary. In *Semler v. Psychiatric Institute of Washington, D.C.*, 538 F.2d 121 (4th Cir.1976), U.S. cert. denied, 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 90 (1976), a probation officer was held liable for the negligent performance of a ministerial act. We find the reasoning in that case unpersuasive in light of the long-standing adherance to the doctrine of absolute judicial immunity as applied to officers of the court in Arizona. *Davis v. Burris*, 51 Ariz. 220, 75 P.2d 689 (1938); *Evans v. Copins*, 26 Ariz.App. 96, 546 P.2d 365 (1976). It is interesting to note that not once did the court in *Semler* speak of "judicial immunity"; the court spoke only of the immunity of state employees.

Appellants also emphasize that although the probation officer would be protected by judicial immunity had he carried out the letter of the court order, he is not so protected because of his allegedly negligent performance of his duties. We find authority to the contrary. In *Davis v. McAteer*, 431 F.2d 81 (8th Cir.1970), a clerk of the Circuit Court of St. Louis was protected by judicial immunity even though the clerk had allegedly lost certain court files which would corroborate the appellant's claim that he had been kept under the influence of drugs while in jail. And in *Davis v. Quarter Sessions Court*, 361 F.Supp. 720 (E.D.Pa.1973), judicial immunity was applied where, due to negligence on the part of employees in the offices of the court, plaintiff's trial transcripts were lost or misdirected.

■ Thus, we find ample support outside our jurisdiction for the application of absolute judicial immunity to probation officers who are performing their duties at the direction of a superior court judge. Furthermore, since the officer's duty to supervise a probationer arises out of a "judicial proceeding" and is a continuation of that proceeding, his/her activities are protected by the absolute judicial immunity left intact in *Grimm, supra.*

■ One last point raised in appellants' brief warrants discussion. Appellants criticize any reliance on cases which grant judicial immunity to probation officers and other court employees in suits brought pursuant to 42 U.S.C. § 1983, et seq. They

argue that nothing in these opinions suggests that probation officers or other court personnel were protected on a theory of absolute judicial immunity solely because they were probation officers. Rather, appellants argue that immunity in these cases was applied because one cannot sue judicial or quasi-judicial officers under that statute. The court in *Davis v. McAteer, supra,* stated, however, that a § 1983 case has not "abolished or in any wise affected the doctrine of judicial immunity." 431 F.2d at 82. Clearly, the nature of the suit, whether brought under § 1983 or as a common law tort claim, is irrelevant to the application of the doctrine of judicial immunity. *See Challenge, Inc. v. State,* 138 Ariz. 200, 673 P.2d 944 (1983); *Robichaud v. Ronan,* 351 F.2d 533 (9th Cir.1965).

Affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.