778 P.2d 1346

**James PRITCHARD and Antoinette Pritchard, husband and wife, Plaintiffs–Appellants,**

**v.**

**The STATE of Arizona, a body politic; Dennis Hunt, individually and as an employee of the Arizona Department of Corrections, and Louanne Hunt, his wife, Defendants–Appellees.**

**No. 1 CA–CIV 9848.**

Court of Appeals of Arizona, Division 1, Department B.

April 13, 1989.

Review Granted Sept. 26, 1989.*

* Gordon, C.J., of the Supreme Court, did not participate in the determination of this matter.

Robert K. Corbin, Atty. Gen. by Judith E. Abramsohn, Asst. Atty. Gen., Phoenix, for defendants-appellees.

Bosco & DiMatteo, P.C. by Carm R. Moehle and Nicholas E. Vakula, Phoenix, for plaintiffs-appellants.

## OPINION

JACOBSON, Judge.

We review whether the trial court erred in concluding that James Pritchard (Pritchard) was barred from suing the State of Arizona under the claims statute, A.R.S. § 12–821.

On January 11, 1985, Pritchard was shot in the stomach by Dennis Eddy (Eddy), while Eddy was burglarizing Pritchard's home. At that time, Eddy was in the parole custody of Arizona Department of Corrections. Approximately twenty-three months later, on December 16, 1986, Pritchard and his wife, Antoinette Pritchard, filed a claim with the state pursuant to A.R.S. § 12–821, seeking damages for the injuries sustained in the January 1985 shooting. On January 9, 1987, the Pritchards filed a complaint against the state, alleging that the state negligently failed to supervise Eddy while he was on parole and seeking damages in an unspecified amount. The state moved to dismiss this complaint for lack of jurisdiction under Rule 12(b)(1), Arizona Rules of Civil Procedure. The court granted the motion without specifying its reasons.

The state argues that the trial court's judgment may be affirmed on any of the following four bases:

(1) Pritchard did not file his claim within twelve months after the cause of action accrued;

(2) Pritchard's failure to file a sufficient claim was not due to his incompetency or due to excusable neglect;

(3) Pritchard did not state a sum certain in his claim; and

(4) Pritchard filed his complaint before the state denied his claim and within sixty days of filing his claim.

The state raised all of these four bases in the trial court. We infer that the trial court found against Pritchard on each of these bases. *See Wippman v. Rowe*, 24 Ariz.App. 522, 525, 540 P.2d 141, 144 (1975) ("We may infer from any judgment the findings necessary to sustain it if such additional findings do not conflict with express findings and are reasonably supported by the evidence.").

## STANDARD OF REVIEW

The state sought dismissal of this action under Rule 12(b)(1), lack of subject matter jurisdiction, contending that failure to comply with the claims statute, A.R.S.

§ 12–821 deprived the court of jurisdiction to adjudicate the claim. We agree that filing a claim with the state is a jurisdictional prerequisite. *See Grimm v. Arizona Board of Pardons & Paroles,* 115 Ariz. 260, 564 P.2d 1227 (1977).

The dissent in this matter takes the position that the 1984 amendment to the claims statute, enacted after the *Grimm* decision, casts doubt about whether the filing of a claim is "jurisdictional." The operative language of the amended statute is that "any claim which is not filed within twelve months after the cause of action accrues is barred and no action shall be maintained except upon a showing of excusable neglect...." A.R.S. § 12–821(A) (Supp. 1988).

■ Whether this changes the "jurisdictional" aspects of the statute is academic. As the case cited by the dissent points out, the proper method of testing the applicability of this statute is by a motion to dismiss, which is the posture in which the matter here was presented to the trial court. *See City of Tucson v. Fleischman,* 152 Ariz. 269, 731 P.2d 634 (App.1986). The real issue is whether the trial court, as compared to a jury, is the proper fact finder to resolve whether the claim is barred. Pritchard contends that this issue must be presented to a jury; that is, that the trial court cannot resolve factual issues presented. The state contends that like other motions to dismiss for lack of subject matter jurisdiction, the court may resolve factual issues. In our opinion, the determination whether the claim is barred under A.R.S. § 12–821 is more analogous to a motion under Rule 12(b)(1); thus, any factual dispute about the existence of the right to maintain the action is for the court alone, and not for a jury to determine. *Williamson v. Tucker,* 645 F.2d 404, 412–13 (5th Cir.1981), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); 2A J. Moore, *Moore's Federal Practice* § 12.07 at 12.49 (3d ed. 1984). The dissent appar-

ently does not dispute this legal proposition.

The parties apparently submitted facts to the court by way of affidavits. Although the Pritchards now contend that they did not receive an evidentiary hearing, they did not object to the court's considering the affidavits, nor did they seek any other hearing before the trial court. Our standard of review on appeal is, thus, whether reasonable evidence supports the trial court's determination that it lacked jurisdiction because of a failure to comply with A.R.S. § 12–821.

### FILING WITHIN TWELVE MONTHS

The state argues that Pritchard's claim, filed twenty-three months after the shooting, was deficient because it was not timely.[1] The applicable claims statute provides:

A. Persons who have claims against a public entity or public employee shall file such claims in the same manner as that prescribed in the Arizona Rules of Civil Procedure, Rule 4(D) within twelve months after the cause of action accrues. Any claim which is not filed within twelve months after the cause of action accrues is barred and no action may be maintained except upon a showing of excusable neglect if the action is brought within the otherwise applicable period of limitations, provided that if there is no excusable neglect, and if the absence of excusable neglect is because of the conduct of the claimant's attorney, then the action shall proceed, and the public entity and public employee shall have a right of indemnity against the claimant's attorney for any liability assessed in the action.

B. Notwithstanding subsection A, a minor or an insane or incompetent person may file a claim within twelve months after the disability ceases.

A.R.S. § 12–821.

■ Pritchard first contends that he was incompetent until at least June 1986, and

---

1. We do not address whether Pritchard is barred from suing the state because Antoinette Pritchard failed to file a claim on their behalf or on her own behalf within twelve months after the shooting. *Cf. Sahf v. Lake Havasu City Ass'n*

*for the Retarded and Handicapped,* 150 Ariz. 50, 54–55, 721 P.2d 1177, 1181–82 (App.1986) (the tolling statute, A.R.S. § 12–502(A), applies regardless of whether a guardian could have brought suit during the period of disability).

that under subsection B, the filing of his claim in December 1986, within six months after the removal of his disability, was timely. As evidence of his disability, Pritchard introduced the affidavit of Terry Scritchlow (Scritchlow), a clinical psychologist, the affidavits of himself and Antoinette Pritchard, and the affidavit of Deputy County Attorney Fred Newton (Newton), who prosecuted Eddy for armed burglary and aggravated assault.

Scritchlow stated that he treated Pritchard until June 1985. In his opinion, Pritchard had an anxiety disorder that completely disabled him emotionally during that time. At the request of Pritchard's attorney, Scritchlow reexamined Pritchard in June 1987. As a result of this reexamination and his interviews with Antoinette Pritchard and Pritchard's business associate, Scritchlow stated, "I believe that I can reasonably say that Mr. Pritchard was totally disabled in his ability to conduct his affairs from the time he was shot in January of 1985 until the early part of November 1985." He explained that "on interview with his wife and business associate, I learned that he began to regain his decision-making abilities in the fall after he was shot."

Both Pritchard and Antoinette Pritchard stated that, as of June 1987, Pritchard still avoided thinking about the shooting. Newton's affidavit was based on three pre-trial interviews with Pritchard and on Eddy's May 1986 trial, at which Pritchard testified. Newton stated that Pritchard would cry whenever he had to recall the shooting:

> [I]t was obvious that [Pritchard] had severe emotional and physical problems as a result of the shooting. Prior to each interview, he apologized for his lack of emotional control when he had to recall and discuss the shooting. He resisted thinking about the shooting unless absolutely necessary. Both he and his wife discussed with me the fact that Mr. Pritchard would break down emotionally whenever the shooting came to mind. For this reason, he would avoid thinking about it at all times.

The state argues that Scritchlow's affidavit would support a finding that Pritchard's disability ceased either in the fall or in the early part of November 1985. We agree. Because Pritchard did not file his claim until December 1986, some thirteen months later, the trial court's conclusion that Pritchard did not file his claim within twelve months after the cessation of his disability is sustainable. At most, the affidavits of Pritchard, Antoinette Pritchard, and Newton created a factual dispute, which the trial court had authority to resolve against Pritchard.

The dissent apparently views this issue as one capable of being resolved as a matter of law. In doing so, it points to Newton's statement that when Pritchard related the details of crime he "would begin to cry," would "sob uncontrollably," and would apologize for his acts, and it appeared that his reaction was beyond his control. In our opinion these nonexpert observations do not compel the conclusion that Pritchard was "insane or incompetent."

### EXCUSABLE NEGLECT

The claims statute also provides that if a person fails to file a claim within twelve months and the failure is due to excusable neglect, the person still may bring an action within the applicable period of limitations. A.R.S. § 12–821(A). Excusable neglect is defined as "reasonable and forseeable neglect or inadvertence." A.R.S. § 12–821(E).

Pritchard argues that a combination of factors require a finding of excusable neglect: (1) his ignorance that a claim against the state might be available until being advised otherwise by a deputy county attorney in June 1986, and (2) the mental problems arising from his injury.

In making the "ignorance" argument Pritchard relies upon two cases, *Davis v. Superior Court*, 25 Ariz.App. 402, 544 P.2d 226 (1976), and *Kleinke v. Ocean City*, 147 N.J.Super. 575, 371 A.2d 785 (1977). In *Davis*, the "ignorance" the court relied upon in finding excusable neglect in failing to file an answer was ignorance about what

action was required by the law, rather than taking no action because of ignorance of the law. In *Davis*, a layman was served with process. The summons required the defendant to "appear and defend" within twenty days of the service. In literal compliance with that directive, the defendant appeared in person at the courthouse and paid the clerk of the court the necessary filing fee, but did not file an answer. Under these circumstances, the appellate court equated "ignorance" with "mistake" and concluded:

It is not unreasonable for a layman to believe that the words "appear and defend" in a summons meant no more than that he go to the courthouse and pay his fee.... That is just exactly what Mr. Davis did. It would be grossly unfair to require him to know from the language of the summons that a responsive pleading was required of him during the prescribed period to prevent a default.

*Davis*, 25 Ariz.App. at 403, 544 P.2d at 227.

In this case Pritchard did not act erroneously based upon ambiguous instruction and ignorance of what was required of him. Rather, Pritchard did not act at all, apparently because he was ignorant that he had a claim against the state, not because he was ignorant of the requirements of the claim statute. Such ignorance does not constitute excusable neglect. *See Daou v. Harris*, 139 Ariz. 353, 678 P.2d 934 (1984).[2]

Likewise in *Kleinke*, a combination of factors led the New Jersey court to conclude that excusable neglect existed for failure to comply with the New Jersey claims statute. This statute requires a filing within ninety days of the injury, but allows this time period to be exceeded for "sufficient reasons" as long as the public entity is not substantially prejudiced by the delay. The claimant, a resident of Illinois, did not meet the ninety day filing period, but did file within time to activate the "sufficient reasons" portion of the statute. Although the trial court found the claimant was unaware of the ninety-day requirement and denied relief, relying in part on the fact that this ignorance was not excused because he was also an attorney, the appellate court seemed to ignore this factor:

The unusual factors involved [justifying the finding of sufficient reasons for delay] relate to the severe nature of the injury, plaintiff's understandable desire to return home for medical treatment, his confinement to a hospital for two months, the incapacitating complication of an embolism requiring absence from his office until January 1976, his bona fide effort to obtain legal advice and assistance within a reasonable period of time, the delay caused by the inaction of a New Jersey attorney to whom the case was originally forwarded—all point to the conclusion that the plaintiff's dilemma resulted from excusable neglect as tested by the standard of a reasonable prudent person under similar circumstances.

*Kleinke*, 147 N.J.Super. 575, 371 A.2d 785.

Pritchard, however, unlike the defendant in *Kleinke*, did not show a "bona fide effort to obtain legal advice and assistance within a reasonable period of time."

Finally, Pritchard reargues that his mental disability constituted excusable neglect when considered either separately or in conjunction with his ignorance.[3] As previously indicated, the trial court could have reasonably concluded under the evidence that this disability ceased some thirteen months prior to Pritchard seeking legal advice.

We therefore hold that the trial court, under the evidence presented, could have found that excusable neglect did not exist so as to excuse the filing requirements of A.R.S. § 12–821.

**2.** The dissent appears to accept the proposition that ignorance of the existence of a cause of action equates with "excusable neglect" without citation of authority.

**3.** The dissent seems to espouse some sort of moral estoppel against the state by hypothesizing that Pritchard neglected his own interest while assisting the state. Aside from the lack of factual support for this hypothesis, there is nothing to indicate that the state either encouraged Pritchard's natural feelings of revenge against his assailant or interfered with Pritchard's attempt to seek redress for his injuries.

The state also argues that the action of the trial court may also be sustained on the grounds that the claim filed did not specify a sum certain and that in any event, suit could not have been filed prior to the expiration of the sixty-day rejection period specified in the statute. Because we conclude that the trial court's ruling is sustainable on the failure to file the claim within the twelve-month period following the injury, we need not reach these issues.

Judgment affirmed.

EUBANK, J., concurs.

FIDEL, Presiding Judge, dissenting:

On January 11, 1985, James Pritchard was shot by the state's parolee, Dennis Eddy, a burglar in his home. From that day until no earlier than November of 1985, Pritchard was totally disabled from conducting his affairs. From November, when, according to Dr. Scritchlow, Pritchard "began to regain his decision-making abilities," through Eddy's trial in May of 1986 and sentencing in June, Pritchard aided and participated in the effort of the state to bring his assailant to justice. Fred Newton of the Coconino County Attorney's Office, who prosecuted Eddy on behalf of the state, described Pritchard's emotional condition:

> From my first contacts with Mr. Pritchard, it was obvious he had severe emotional and physical problems as a result of the shooting. Prior to each interview, he apologized for his lack of emotional control when he had to recall and discuss the shooting. He resisted thinking about the shooting unless absolutely necessary.

Yet Pritchard underwent three pretrial interviews and testified at Eddy's trial in an effort to help the state.

In June of 1986, after Eddy's sentencing, prosecutor Newton learned of Pritchard's unpaid medical bills and suggested that Pritchard explore his legal rights. Pritch-

ard waited until December of 1986 to do so. On December 12, he consulted an attorney, who four days later filed notice with the state, claiming that the state had negligently administered Eddy's parole. Thereafter, before the expiration of the two year statute of limitations, Pritchard filed this suit.

On this evidence the state claims and the trial court presumably found—correctly according to this court's majority—that Pritchard unreasonably and unforeseeably delayed exploring his legal rights. See A.R.S. § 12–821(E), which defines excusable neglect as "reasonable and foreseeable neglect or inadvertence."

I dissent.[1]

I differ first with the majority's conclusion that A.R.S. § 12–821 is jurisdictional. The predecessor of our present statute was jurisdictional, as stated in the case cited by the majority, *Grimm v. Arizona Board of Pardons and Paroles*, 115 Ariz. 260, 263, 564 P.2d 1227, 1230 (1977). However, § 12–821 was substantially revised in 1984. Under the present statute,

> the only situation [of untimely notice] in which an action may be dismissed is where the court finds first, that the failure to timely file the notice was due to the conduct of the claimant and second, that his conduct was not 'excusable'. In all other cases, 'the action shall proceed.'

*City of Tucson v. Fleischman*, 152 Ariz. 269, 272, 731 P.2d 634, 637 (App.1986).

I next differ with the majority's conclusion that the trial court could properly have concluded that Mr. Pritchard's disability ceased for purposes of A.R.S. § 12–821(B) in November of 1985, more than twelve months before the state got notice of his claim. The majority bases this conclusion on the affidavit of Dr. Scritchlow. Dr. Scritchlow said only, however, that Pritchard's *total* disability ended in November of 1985 and that he then "*began* to regain his decision making abilities." [2] The remaining

---

**1.** The majority lists several grounds advanced by the state as a basis for affirmance. I find none of them sufficient to justify dismissal and, therefore, would reverse. However, I limit this discussion to the grounds addressed in the majority opinion.

**2.** Indeed, Dr. Scritchlow described Pritchard as still suffering from a post-traumatic stress disorder—by then chronic—as of June of 1987.

evidence, some of it from prosecutor Newton, describes Pritchard in the process of climbing from an emotional hole in the subsequent months, struggling to come to grips with his shooting in order to help *the state.* Newton described Pritchard's condition at interviews held "one to two months prior to [the May] trial:"

> During all three pre-trial interviews, Mr. Pritchard expressed strong beliefs that he knew it was his duty as a citizen to cooperate, but shortly after he began to relate the details of the crime, he would begin to cry. At times he would sob uncontrollably. He apologized to us each time, but the reaction was beyond his control. Prior to and after the interviews, I would try to put him at ease by discussing unrelated matters in a very casual manner. He responded to this conversation in a normal way.

Such evidence, undisputed by any witness including Dr. Scritchlow, does not fairly permit the conclusion that Pritchard had emerged from disability by November of 1985. That month stands rather, according to all of the evidence, as the time when his recovery began.

I next and most materially differ from the majority's treatment of the issue of excusable neglect. The majority acknowledges that, under our claims statute, "if a person fails to file a claim within twelve months and the failure is due to excusable neglect, the person still may bring an action within the applicable period of limitations." The majority finds no excusable neglect, however, because, in its view, Pritchard failed to make a "bona fide effort to obtain legal advice and assistance within a reasonable period of time."

The majority acknowledges that Pritchard was disabled at least until November of 1985 and, thus, for approximately the first ten months of the twelve-month notice period provided by A.R.S. § 12–821(A). The majority discounts, however, that for the next eight months, through June 16, when Eddy was sentenced, Pritchard participated at considerable emotional cost in the state's effort to prosecute and convict his assailant. He gave three pretrial interviews.

He testified at trial and attended Eddy's sentencing. He came to Newton's office after the sentencing to express his thanks for the prosecutor's efforts. He obviously looked *to the state* and its criminal process for vindication. If the state and majority find it inexcusable that he did not simultaneously explore civil recourse *against the state,* I am unable to join them. I deem Pritchard's participation in the prosecution of Eddy an excuse for neglect of his own interest as a matter of law.

The evidence establishes that Pritchard was ignorant of the existence of a cause of action until June 16, when Newton alerted him to the possibility of a legal remedy. The majority mischaracterizes my position when it suggests that I "accept the proposition that ignorance of the existence of a cause of action equates with 'excusable neglect'...." That is incorrect. I neither accept nor reject that position in this case, as I see no need to reach that issue. Rather, in my view, Pritchard's extended period of physical and emotional disability, lasting to and beyond November of 1985, and his cooperation in the state's prosecutorial effort through June of 1986 combine to establish excusable neglect for his failure to file a notice of claim with the state by January 11, 1986. Because this period of excusable neglect carried well beyond the twelve-month notice mark, Pritchard was required thereafter only to bring "the action ... within the otherwise applicable period of limitations." A.R.S. § 12–821(A). Pritchard did so and, accordingly, met the statutory requirement to maintain this claim.

I must add a final comment on the state's position in this case. The state in other forums professes its concern for the victims of crime. The state recognizes the threat to public justice if victims decline to cooperate in prosecution, and it rightly urges support for programmatic efforts to help victims meet the demands of the criminal process. In the present case, James Pritchard, a victim, neglected his own interest vis a vis the state while he assisted the state's prosecution of Eddy. The state asks us to find this unreasonable, unforeseeable, and inexcusable. I find rather

that the state's position is unconscionable, and I cannot join my colleagues of the majority in accepting it.